OPINION OF THE COURT
Meyer, J.
The principle, declared in Schiff Assoc. v Flack (51 NY2d 692), that the failure to disclaim coverage does not create coverage which the policy was not written to provide, applies to liability policies as well as professional indemnity insurance, notwithstanding the provisions of subdivision 8 of section 167 of the Insurance Law. The words “deny coverage” in that subdivision refer to denial of liability predicated upon an exclusion set forth in a policy which, without the exclusion, would provide coverage ’ for the liability in question. It does not encompass denial that the policy as written could not have covered the liability in question under any circumstances. The order of the Appellate Division should, therefore, be affirmed, with costs.
Judith Zappone, her brother, Michael, and her father, Dominick, reside in the same household. Home Insurance Company issued an automobile liability policy to Judith covering a 1970 MG. Judith also owned a 1966 Mercedes Benz which was, however, insured not by Home but by Aetna Insurance Company. Home also insured a 1963 Chevrolet owned by Dominick. On July 20, 1975, Michael was involved in a collision while driving Judith’s Mercedes Benz with Judith’s permission. Aetna undertook the defense as to the claim arising out of the collision and has offered to pay up to the limits of its policy in settlement. In November, 1975, two of the persons injured in the collision sued Michael and Judith. Notice of the action and the accident was given to Home by the Zappones on January 6, 1976. Home, by letters dated January 20, 1976 predicated essentially on late notice, advised that it would investigate the matter but was reserving its rights. Not until April 14, *135 1977 did it advise the Zappones that, because the Mercedes Benz was neither an owned nor a nonowned automobile under either Judith’s or Dominick’s policy, it would not provide coverage excess to the Aetna policy.
The Zappones and Aetna then brought this action for judgment declaring that the Zappones were entitled to excess coverage under the two Home policies and that Home’s disclaimer was invalid by reason of subdivision 8 of section 167 of the Insurance Law. Trial Term granted the judgment requested, but on appeal to. the Appellate Division that court, two Judges dissenting, reversed on the law and directed entry of judgment declaring that neither policy provided coverage for the incident of July 20, 1975 and that Home was not required by subdivision 8 of section 167 to give notice of denial of coverage. We affirm.
Subdivision 8 provides that: “If under a liability policy delivered or issued for delivery in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.” It is settled law that the subdivision applies whether the policy is primary or excess (Preisch v Continental Cas. Co., 55 AD2d 117, mot for lv to app den 41 NY2d 802), that if the subdivision applies it is the carrier’s burden to explain its delay in notifying of its disclaimer or denial (Hartford Ins. Co. v County of Nassau, 46 NY2d 1028, 1029), that a reservation of rights letter does not constitute compliance with the requirements of the subdivision (id.; Allstate Ins. Co. v Gross, 27 NY2d 263, 269), and that an unexplained delay of 15 months is unreasonable as a matter of law (Hartford Ins. Co. v County of Nassau, supra; Regional Tr. Serv. v Kemper Ins. Cos., 73 AD2d 1036). If the subdivision was intended to cover the situation of the instant case, therefore, Trial Term’s decision was correct.
We conclude, however, that the Legislature did not intend by its use of the words “deny coverage” to bring within the policy a liability incurred neither by the person insured nor in the vehicle insured, for to do so would be to impose *136 liability upon the carrier for which no premium had ever been received by it and to give no significance whatsoever to the fact that automobile insurance is a contract with a named person as to a specified vehicle.
The parties have presented no legislative report or memorandum to explain the sense in which the words were used in the statute and our research has revealed none. Essentially then the arguments advanced are in terms of the plain meaning of the words on the one hand and on the other the unreasonableness of the result which would provide insurance coverage to a person and with respect to a vehicle for which no premium had ever been received by the carrier.
A carrier may deny liability because, for example, its insured has breached the terms of his policy by failing to co-operate in the defense of the lawsuit brought by the injured person or by failing to give notice of an accident or of the beginning of an action against the insured. It may deny liability because although the person and the vehicle are covered by the policy the circumstances of the accident bring a policy exclusion into play, for example, that the person injured is an employee of the insured whose injury arose out of and in the course of his employment or was injured while an automobile insured as a pleasure vehicle was being used as a public conveyance. It may deny liability because it made no contract of insurance with the person and for the vehicle involved in the accident in question or because, though there was such a policy at one time, it had, prior to the accident, been canceled by the insurer or terminated by act of the insured.
In the first instance, the policy covers the driver, the vehicle and the accident and the carrier will be liable unless it disclaims liability because of the insured’s breach. In the second, the policy covers the driver and the vehicle and the accident would be covered except for the specific policy exclusion and the carrier must deny coverage on the basis of the exclusion if it is not to mislead the insured and the injured person to their detriment. In the third, though the carrier may have some other relationship with the owner or driver of the vehicle, it has no contract with that person with respect to the vehicle involved and, there *137 being no contractual relationship with respect to the vehicle, is not required to deny coverage or otherwise respond to a claim arising from an accident involving that vehicle except as statute mandates or courtesy suggests. Though the second and third situations may both be denominated a denial of coverage, there is a basic distinction between them; as the Trial Judge put it, in the second there is no coverage “by reason of exclusion,” in the third, by reason of “lack of inclusion.” We disagree, however, with his conclusion that because both situations fit within the meaning of the words “denial of coverage” both were intended to be covered by subdivision 8 of section 167.
In the interpretation of statutes the “[a]bsence of facial ambiguity is *** rarely, if ever, conclusive” (New York State Bankers Assn. v Albright, 38 NY2d 430, 436). Literal interpretation of the words used will not be accorded when to do so will occasion great inconvenience, or produce inequality, injustice or absurdity (Matter of Hogan v Culkin, 18 NY2d 330, 335; Matter of Petterson v Daystrom Corp., 17 NY2d 32, 38; Matter of Meyer, 209 NY 386, 389; McKinney’s Cons Laws of NY, Book 1, Statutes, § 111, pp 233-234). It is, moreover, always presumed that no unjust or unreasonable result was intended and the statute must be construed consonant with that presumption (Matter of Breen v New York Fire Dept. Pension Fund, 299 NY 8, 19; McKinney’s, Statutes, § 143), the court looking to the purpose of the legislation as a whole rather than its literal words (New York State Bankers Assn. v Albright, 38 NY2d 430, 437, supra).
The purpose for which subdivision 8 of section 167 was enacted was to avoid prejudice to the insured, the injured claimant and the Motor Vehicle Accident Indemnity Corporation, each of whom could be harmed by delay in learning of the carrier’s position (Allstate Ins. Co. v Gross, 27 NY2d 263, 267, supra). It was not, however, to provide an added source of indemnification which had never been contracted for and for which no premium had ever been paid. Here, as in State Farm Mut. Auto. Ins. Co. v Westlake (35 NY2d 587, 592), to hold Home for Michael’s accident in the Mercedes Benz on either of the policies written by Home on Judith’s MG or Dominick’s Chevrolet would be to *138 rewrite the policy to expose Home to a risk (an accident in the Mercedes Benz when driven by someone other than Judith in the one case or Dominick in the other) never contemplated by the parties and for which Home had never been compensated, though the Insurance Law requires that a rate commensurate with the risk assumed be charged without deviation or discrimination (see §§180, 183-186). Home argues that if the subdivision be construed to impose such bootstrap coverage as the penalty for failure to give notice of noncoverage it would violate a number of constitutional provisions. We do not reach that issue for we conclude that the Legislature in using the words “denial of coverage” did not intend to require notice when there never was any insurance in effect, and intended by that phrase to cover only situations in which a policy of insurance that would otherwise cover the particular accident is claimed not to cover it because of an exclusion in the policy. A contrary rule would impose an intolerable burden on carriers, subject as they are to penalty for a misrepresentation concerning coverage (Insurance Law, § 40-d), if they must, upon penalty of having to cover a claim for which no premium has been paid, respond within the relatively short period of time that subdivision 8 of section 167 has been construed to require. The more particularly is this so when it is recalled that the subdivision covers not only motor vehicle accidents but any other type of accident and requires notice not only to an insured but also to the injured person or any other claimant, bearing in mind the crisscrossing of liability policies, often with widely different liability limits, that would result.
The case law construing the subdivision is not contrary to the conclusion we now reach. Indeed, as is conceded by appellants and the dissenting Judges below, in Perez v Hartford Acc. & Ind. Co. (31 AD2d 895, 896) the Appellate Division, First Department, held that “subdivision 8 of section 167 of the Insurance Law does not refer to a situation as in the case at bar where coverage had terminated due to a cancellation of the policy long before the happening of the accident”, and this court affirmed (26 NY2d 625). If the subdivision does not require notice with respect to a policy which has been terminated, it is difficult *139 to understand why it should require notice with respect to a policy which does not insure a car owned by another person when that car is not driven by the person to whom the policy was issued. In either case there simply is no insurance at all and, therefore, no obligation to disclaim or deny. That the subdivision does not require disclaimer with respect to a vehicle owned by a person other than the insured was the conclusion in State Farm Mut. Auto. Ins. Co. v Elgot (48 AD2d 362) and Matter of United States Fid. & Guar. Co. (Assenza) (52 AD2d 772), and on the basis of the State Farm decision it was held by the Appellate Division, First Department (51 AD2d 525), and affirmed by us on the memorandum below (41 NY2d 872), in Matter of Allcity Ins. Co. (Sioukas), that since an excess carrier “did not have a policy affording coverage to the respondent until the primary coverage had been exhausted, it had no duty to serve a notice of disclaimer”.[1] Thus, it cannot be argued that “denial of coverage” means a denial for whatever reasons.[2]
The fallacy of the dissent’s contrary argument is revealed by its footnote 1 and its penultimate paragraph. A policy which covers neither the person nor the vehicle involved in an automobile accident does not create an insurer-insured relationship as to automobile liability by reason of that policy. The fact that there may be another policy on another vehicle does not create the relationship with which the statute deals any more than would a homeowner’s liability policy on a house or a premises liability policy on a store. Whether the relationship no longer exists because a policy otherwise covering person *140 and vehicle has been terminated or never came into existence because there was no insurance for either vehicle or driver is simply irrelevant. The result is the same.
For the foregoing reasons, the order of the Appellate Division should be affirmed, with costs.

. Preisch v Continental Cas. Co. (55 AD2d 117, mot for lv to app den 41 NY2d 802, supra), holding that a duty arises to give notice once the primary carrier has fulfilled its obligation, is not to the contrary.

. The cases relied upon by appellants and the dissenting Judges below do not undermine the conclusion now reached. Though Foremost Ins. Co. v Sotiriou (66 AD2d 812) and Security Ins. Group v Priestly (61 AD2d 795) appear to hold to the contrary with respect to the statutory exclusion from coverage of interspousal liability, review of the briefs in both cases shows that the distinction between types of noncoverage on which this decision rests was not argued in either case and that the reference to subdivision 8 of section 167 in the Foremost decision concerned the extension of that section to include accidents other than motor vehicle, not whether the policy covered at all. Moreover, Regional Tr. Serv. v Kemper Ins. Cos. (73 AD2d 1036, supra); State of New York v Fidelity & Cas. Co. (70 AD2d 687); and Newman v Ketani (54 AD2d 926) each concerned, as the report or the record in the case establishes, an exclusion from the policy rather than the absence of any coverage at all.