OPINION OF THE COURT
Nat H. Hentel, J.
During the jury trial of this personal injury action, plaintiffs’ motion at the end of the entire trial raised a question concerning the right to economic recovery conferred on an uninsured motorist driving an uninsured motor vehicle under article 18 of the Insurance Law. The accident involved a two-vehicle collision on February 24, 1981, and was a driver against driver situation. Defendant’s vehicle was insured. Plaintiff’s vehicle was uninsured, and was owned by his wife in whose name it was registered.
The trial was a bifurcated one, and the jury had already rendered a unanimous verdict on the liability phase of the trial under the comparative negligence doctrine of 100% negligence attributable to the defendants.
In the damage phase of the trial, three medical experts called by the parties were unanimous in their opinions that severe facial lacerations suffered by plaintiff in the accident, in addition to other nonpermanent injuries, had *574 resulted in prominent and permanent scars on both sides of plaintiff’s face; and further that there was a permanent loss of facial sensation in the areas of the healed lacerations because of traumatic interference with some facial nerves. The scars were truly significant even after more than three years had gone by, they were easily seen, and they have altered plaintiff’s former normal facial appearance, and, according to plaintiff, the scars are causing him psychological distress.
In addressing the issue before it, the court clearly noted that if this had been a “no-fault” insurance case, it would have determined at that point as a matter of law, that such injuries as claimed herein would have been “serious injuries” within the purview of the “no-fault” law sufficient to satisfy threshold requirements on the basis of permanent scars which significantly disfigured plaintiff’s face. (See Licari v Elliot, 57 NY2d 230.) The issue of an uninsured person’s burden to prove “serious injury” (noneconomic loss), is, however, not reached in this decision, note: jury subsequently returned a verdict in favor of plaintiff for $156,766.54, plus $20,000 for his spouse for loss of her husband’s services.
Four days after the accident, plaintiff demanded no-fault economic benefits assuming that his wife’s previously maintained insurance policy was still in effect. Despite the fact that plaintiff was subsequently shown to have operated an uninsured motor vehicle on the date of the accident, there was no proof that he personally knew, or should have known, that his wife, who habitually received and paid the insurance premium notices, had failed to pay the last one, and that the insurance had lapsed some seven weeks prior to the accident as a result. Plaintiff had used his wife’s vehicle on a daily basis to get to and from his work with his wife’s permission.
The insurance company disclaimed coverage on the ground of nonpayment of premiums. After an arbitration proceeding of the disputed coverage, the arbitrator found in favor of Mrs. Woodbine, on the theory of estoppel. The insurance company appealed to the Master Arbitrator who reversed, and made an award in its favor. He found “that estoppel did not lie (1) because Mrs. Woodbine was on *575 proper notice regarding the cancellation of her insurance, and (2) since the insurance was properly cancelled, estoppel could not be used to create insurance where it no longer existed”, citing Zappone v Home Ins. Co. (55 NY2d 131). A further appeal to the Supreme Court in New York County before Mr. Justice Martin Evans resulted in an affirmance of the Master Arbitrator, and a finding that there was a rational basis to his award. Justice Evans found that “Mrs. Woodbine knew before the accident that she was without coverage, [that] she admitted] to discussing this with her broker, [that] the renewal notice of February 9,1981, d[id] not state that she ha[d] effective coverage until April, 1981. The correspondence stating that she does have insurance until April, 1981, all postdate[d] her husband’s claim for insurance.”
Nowhere in Justice Evans’ opinion, nor in the trial testimony, is there proof of involvement in the payment of such premiums by plaintiff, or that he had knowledge of the cancellation. Thus, this court concludes that plaintiff is not a “covered person” under article 18 (§ 671, subd 10) of the Insurance Law, which reads in pertinent part: “ ‘Covered person’ means any * * * operator * * * of, a motor vehicle which has in effect the financial security required by articles six or eight of the vehicle and traffic Law * * * or any other person entitled to first party benefits.”
The issue to be decided by the court during trial was introduced at the end of the entire case. Plaintiff, at that time, contended since he was pursuing his common-law right to sue defendants in negligence, amply corroborated by the 100% liability jury verdict against defendants, that he also had the common-law right to sue defendants for his reasonable hospital and medical expenses, loss of earnings, and diminution of future earning capacity incurred as a result of the accident since he was denied no-fault economic benefits by the lapse of his wife’s insurance coverage.
This motion was opposed by defendants who claimed that plaintiff should not be allowed to benefit by his failure to comply with the law requiring him to have in effect the financial security required by article 6 or 8 of the Vehicle and Traffic Law. Thus, he would be barred from claiming *576 any first-party benefit for economic loss. Defendants further claim that the knowledge of the policy’s lapse by his wife was known or imputable to plaintiff. (As to this latter claim, there was no proof during trial to that effect on the record. This court finds that the mere closeness of the marital relationship does not warrant an imputation of actual or constructive knowledge on the part of the husband either through osmosis, or some other process, without direct proof.)
Is then a noninsured operator of a motor vehicle, who is not an owner thereof, entitled to sue for economic loss as a common-law right?
A review of the “no:fault” law reveals that this issue is not addressed by the statute nor its amendments and is apparently an anomalous loophole. Several lower court decisions have considered this problem and have fashioned various remedies after a review of legislative intent and available precedent. (See Millan v Yan Yee Lau, 99 Misc 2d 630; State Farm Mut. Auto. Ins. Co. v Coppersmith, 97 Misc 2d 37; Stark v Miller, 95 Misc 2d 643; Marc-Charles v Krug, 93 Misc 2d 603; Scarpelli v Marshall, 92 Misc 2d 244; Gamble v Randolph, 91 Misc 2d 436; Kimbrough v Walker, 89 Misc 2d 177.)
Section 671 of the Insurance Law created a statutory scheme by which persons, injured in automobile actions may be compensated for their economic loss without regard to fault. “They derive their legal standing from the umbrella of insurance which must be provided in every owner’s policy of auto liability insurance in effect after January 31, 1974, (Insurance Law, § 672, subd 1).” (Marc-Charles v Krug, 93 Misc 2d 603, 607, supra.)
It is clear that pursuant to Justice Evans’ decision (supra) plaintiff is not a covered person and may not look to the no-fault law for first-party benefits. The law is explicitly addressed to covered persons. As the Court of Appeals has said in Montgomery v Daniels (38 NY2d 41, 62): “Such persons operate their vehicles in violation of the law of our State * * * and further make no contribution to the automobile injury compensation system designed to spread the risk of loss among all who drive.”
*577 It is this court’s function to determine whether plaintiff has a right to the $6,766.54 found by the jury to be plaintiff’s economic loss.* Has his claimed entitlement been obliterated by the Legislature’s omission of this contingency as found in some earlier cases considering this issue? “Nowhere does [section 673 of the Insurance Law] state that the cause of action which a noncovered person would have possessed prior to its enactment has been abrogated * * * [T]he ‘no-fault’ law is in derogation of the common law and it is a firmly established principle of law that statutes in derogation of the common law are to be strictly construed and the common law is never abrogated by implication. In short, the common law must be held to be no further abrogated than the clear import of the language used in the statute absolutely requires. (See McKinney’s Cons Laws of NY, Book 1, Statutes, § 301.)” (Scarpelli v Marshall, 92 Misc 2d 244, 247, supra.)
Plaintiff, then, having no statutory right must look to his common-law remedies against defendants. But, is plaintiff, as defendant argues, rewarded for operating an uninsured vehicle in violation of the law, assuming, arguendo, that such knowledge was imputed to him? No!
Because he is relegated to his common-law right, plaintiff runs the risk of having his claim for economic loss denied completely or diminished by the percentage of culpability attributable to him under the comparative negligence statute of this State, rather than recovering up to $50,000 per person for basic economic loss as described in sections 671 and 672 of the Insurance Law without regard to fault.
If the jury makes any award for plaintiffs’ economic losses at common law, such an award is final and limits plaintiff to that award. Under “no-fault”, any such award less than $50,000 would allow plaintiff to recover for future economic losses for hospital and medical expenses, and loss of earnings thereafter up to $50,000. It is clear that such penalties prevent any uninsured plaintiff from reaping benefits where he has failed to comply with the law.
*578 Since plaintiff herein is found to be without fault, he may recover the full amount of his economic loss as found to be fair and reasonable by the jury.
This court holds the remedy of uncovered persons under these circumstances to be at common law subject to a finding of fault and any concomitant reduction of an award made by the jury.
Plaintiff’s motion to be allowed to sue at common law for his economic loss is thus granted.

 The court asked the jury to answer a special interrogatory regarding the amount of plaintiff’s loss of earnings which were found to be $3,600. The parties stipulated as to the amount of medical expenses and hospital expenses of $3,166.54.