OPINION OF THE COURT
Jeffry H. Gallet, J.
In proceeding 1, respondent objects to an order of support (James Weigert, H.E.). The order is reversed and the matter is remanded for further proceedings before Hearing Examiner Weigert.
In proceeding 2, petitioner objects to an order of support (Ruben M. Garcia, H.E.). The order is reversed and the matter is remanded for further proceedings before Hearing Examiner Garcia.
In proceeding 3, petitioner objects to an order of support (Judith S. Croiter, H.E.). The objections are denied and the order of support is affirmed.
THE ISSUE
Each of these proceedings involves an interpretation of the term "financial resources” found in Family Court Act § 413 (1) (f) and Domestic Relations Law § 240 (1-b) (f).[2] The basic child support rule in this State is that each parent is responsible for the support of his/her minor children. (Family Ct Act § 413 [1] [a].) The amount of that support is to be set in accordance *825 with the detailed formula found in Family Court Act § 413. Subdivision (1) (f) of section 413 provides an exception to the application of the child support formula. It sets forth 10 factors to be considered in determining whether or not the application of the child support formula would be "unjust or inappropriate.”
Seven of those factors, the child’s special needs, aptitudes and health, the standard of living the child would have enjoyed had the household not been dissolved, the tax consequences, the nonmonetary contributions of the parents, the educational needs of the parents, a comparison of the gross incomes of the parent and visitation expenses when the child is not receiving public assistance, are relatively clear. Subdivision (1) (f) (10) permits a court to consider any other factors it considers relevant to the case before it.
Clauses (1) and (8) of section 413 (1) (f) provide that a court may consider the financial resources of the parents and the child and the needs of the noncustodial parent’s children for whom he/she is providing support not mandated by court order or written agreement. However, a court may only consider those needs if the financial resources available to the noncustodial parent’s other children are less than the resources available to support the children before the court. The statute gives neither a definition of, nor a formula to calculate, the "financial resources.”
DISCUSSION
Judges and Hearing Examiners have been grappling with the problem of support for children not then before the court since the passage of the child support guidelines. Indeed, courts and Legislatures across the Nation have been struggling with this issue in its many manifestations. (See, Takas, The Treatment of Multiple Family Cases Under State Child Support Guidelines, US Dept of Health and Human Services [1991].) The problem is most difficult to address in cases where one or more of the children involved is receiving public assistance. In such cases, even where the noncustodial parent is employed, we frequently find that there are not sufficient resources to adequately support all of the children involved. (See, for example, Matter of Steuben County Dept. of Social Servs. v James, 171 AD2d 1023 [4th Dept 1991]; Matter of Josephine M., 151 Misc 2d 1010 [Fam Ct, NY County 1991]; Matter of Commissioner of Social Servs. v Jose E., NYLJ, July 18, 1990, at 20, col 6 [Fam Ct, NY County 1990].)
*826 In Jose E. (supra), the court noted that the amount of a support order for a child may be greater or smaller depending on whether the child’s mother gets to the courthouse before or after the mother of a half-sibling. The court was able to resolve the problem by directing that the cases of the half-siblings be tried together so that an appropriate result would occur. It did not have to address the problem of having one child at bar while another is supported voluntarily.[3]
It is important to note that most children in this country are supported by their parents without benefit of a written agreement or court order. Some children live with both parents who support them as necessary and others are supported as a result of agreements between their parents. That practice should be encouraged.
Under the current statutory scheme, both what is to be considered "resources” and whether or not strict adherence to the guidelines would be "unjust or inappropriate” must be made on a case-by-case basis. However, certain rules and considerations can be universally applied.
RESOURCES
"Resources,” as the term is used in Family Court Act § 413 (1) (f) (1) and (8), is a broad term, encompassing considerably more than the term "income.” Although the term does not lend itself to easy definition, it includes everything available to support the child. As the court, referring to the prechild support guidelines case law, held in Matter of Josephine M. (supra, at 1014): "There is * * * a substantial body of law to be used in determining the resources available to custodial parents, noncustodial parents and the various children involved.”
Appellate courts have held that resources need not be based on an enforceable contract and regular monthly gifts from a relative would be included. (Blickstein v Blickstein, 99 AD2d 287 [2d Dept 1984], appeal dismissed 62 NY2d 802 [1984].) In addition, non-income-producing assets and the ability to draw income and the principal from a trust may be included. (Kay v Kay, 37 NY2d 632 [1975]; Scheuer v Scheuer, 144 AD2d 225 [3d Dept 1988].) A court may also consider a paramour’s resources *827 or those of the custodial parent’s spouse. (Matter of Farley v Farley, 114 AD2d 703 [3d Dept 1985]; Matter of Boden v Leccese, 83 AD2d 636 [2d Dept 1981].)
Indeed, one of the resources may be the ability to earn of the noncustodial parent, that person’s spouse or another person living with the noncustodial parent. (See, Hickland v Hickland, 39 NY2d 1 [1976], cert denied 429 US 941 [1976]; Matter of Doscher v Doscher, 80 AD2d 945 [3d Dept 1981], affd 54 NY2d 655 [1981].)
PUBLIC ASSISTANCE
There is considerable controversy as to whether public assistance payments either allocated for the child or to the custodial parent’s household should be considered resources. The Commissioner argues, in essence, that public assistance is neither income nor money to which the child is entitled if the child’s noncustodial parent has any resources. By that logic, the Commissioner concludes that a custodial parent’s resources are zero when a child is on public assistance and that the exception of clause (8) can never apply to public assistance cases because the noncustodial parent’s available resources for other children is invariably more than nothing.
The Commissioner is not correct. The case law in this State holds that moneys received or available to the child from persons who have no legal obligation to support the child or a parent can be considered in setting child support amounts. (Blickstein v Blickstein, supra; Matter of Farley v Farley, supra; Matter of Boden v Leccese, supra; Matter of Felisa L. D. v Allen M., 107 Misc 2d 217 [Earn Ct, Bronx County 1980].)
The Commissioner is no more than the assignee of the child’s custodian. If the child’s custodian was suing for support, all sources of support available to the custodial household would be considered. That does not change when the Commissioner sues as the custodian’s assignee. The purpose of the resources calculation is to determine whether or not all of the children involved are properly supported. That can only be determined by considering all available sources of support. To do otherwise might very well lead to an unjust result, unintended by the Legislature. Such a result would be an unacceptable interpretation of the Legislature’s child support scheme. (See, Zappone v Homes Ins. Co., 55 NY2d 131 [1982]; New York State Bankers Assn. v Albright, 38 NY2d 430 [1975].)
*828 The Legislature has set the public assistance amount as the absolute minimum child support necessary to keep a child. (See generally, Social Services Law part 5; Legislative Findings, L 1969, ch 184, § 1; 18 NYCRR part 352; Matter of Carolyn C. v Frank G., 106 Misc 2d 510 [Fam Ct, NY County 1980].) By setting a minimum standard, the Legislature has declared New York’s public policy that no child should live below that level. If the resources calculation is done without considering the child’s allocated share of the custodial home’s public assistance budget, the ultimate division of the noncustodial parent’s income among the children may leave a child living with a noncustodial parent at a support level less than the public assistance level. Of course, if a noncustodial parent’s resources for other children exceeds the public assistance level, the section 413 (1) (f) (8) exception will not apply and the State’s interest in having parents support their children without the State’s assistance can be met.
The amount of public assistance given to the custodial home designated as support for the custodial parent or other residents of the home cannot be considered resources for the child. Since the Legislature has determined that those amounts are the minimum necessary to support those for whom they are allocated, there will be nothing left to support the child.
SIBLINGS
Siblings create a special problem. There is no doubt that it was the Legislature’s intent, when it amended section 413 in 1989, that all children be appropriately and adequately supported, including siblings and half-siblings of children before the court. (L 1989, ch 567; Matter of Commissioner of Social Servs. v Jose E., supra.) It was also the Legislature’s intention that all children receiving public assistance be supported in part or in whole by a parent with means to the extent available. (Social Services Law § 398 [6] [d]; Matter of Darene H. v Patricia S., 90 Misc 2d 558 [Fam Ct, Kings County 1977]; Rockland County Dept. of Social Servs. v Brust, 102 Misc 2d 411 [Fam Ct, Rockland County 1979].)
As applied to half-siblings, the problem of allocating child support resources is frequently complex because the children involved have different family structures and different poten *829 tial resources. The conflict between the two stated public policies becomes more stark where full siblings are divided between a custodial parent receiving public assistance and a noncustodial parent who is not, but has limited resources. In such a case, Family Court Act § 413 (1) (f) (10) would appear to apply and the equities between siblings would have to be balanced on a case-by-case basis. Certainly, an effort must be made in each case to treat the siblings equally and not to enter an order in favor of one sibling which would cause undue hardship to another sibling.
OTHER FACTORS
A specific calculation must be made on a case-by-case basis to determine the real amount available for the support of all of the children. (Matter of Josephine M., supra.) In each case, the trial court must consider, in addition to the specific items set forth in section 413 (1) (f), any other factors which may be relevant, including a noncustodial parent’s current debt and expenses in the maintenance of his/her household. (Matter of Steuben County Dept. of Social Servs. v James, supra.) However, there is a clear legislative intent that the total amount available for support of all of the children, custodial and noncustodial, be no less than the amount the noncustodial parent would have to pay pursuant to section 413 if all of the children were subject to orders of support. The burden is on the noncustodial parent to prove that he/she has unpostponable obligations of extreme importance before the gross amount for child support would be less than the amount calculated under the guidelines.
DECISION
Upon review of the records in proceedings 1 and 2, I find that it is impossible to determine whether the results would be the same if the factors set forth in this opinion were considered. Accordingly, those proceedings are remanded for additional proceedings before the respective Hearing Examiners, on December 7, 1991. Upon review of the record in proceeding 3, I find that the Hearing Examiner applied the proper tests to the facts before her and her order is affirmed.

. In 1989, the Legislature enacted the Child Support Standards Act which amended both Family Court Act § 413 and Domestic Relations Law § 240 to add identical standards and guidelines for the issuance of child support orders. (L 1989, ch 567.) Because it is what actually applies to this case, only Family Court Act references are used here. However, the reasoning of this opinion applies equally to the Domestic Relations Law.

. Judge Bruce Kaplan in Jose E. and Judge George Bernhard in Sally R. v Stewart R. (151 Misc 2d 307 [Fam Ct, Dutchess County 1991]) call on the Legislature to review the Child Support Standards Act to deal with the problems of siblings and joint custody. I add my voice to theirs.