OPINION OF THE COURT
Walter J. Relihan, Jr., J.
The plaintiff, Travelers Property Casualty, brings an action for a declaratory judgment seeking to be relieved of any duty to defend or indemnify Chad Weiner in an action brought against him for assault and battery. The injury occurred on the night of May 10-11, 1993 as the result of a brawl.
On February 3, 1994, James Fauth, the victim, brought a personal injury action against the assailant, Chad Weiner, who is an additional insured under a homeowner’s policy issued to his parents. The Weiners gave prompt notice of the Fauth claim to the insurer which responded, by letter, on March 9, 1994. After alluding to the fact that the Fauth complaint contained causes of action for both assault and negligence, the insurer’s letter told the Weiners: "Depending on the proof developed in this case, there may not be an 'occurrence’ and the bodily injury * * * may be intentional”.
Thus, the letter reserved the insurer’s right to disclaim coverage if further inquiry should disclose that the events alleged in the complaint (1) were not among the occurrences defined by the policy and, hence, were not insured or (2) were insurable but had been specifically excluded from coverage. On that understanding, the insurer appeared for the Weiners and defended the case for the next three years.
The policy defines an insured "occurrence” as "an accident” which results in bodily injury. In a subsequent section, the policy excludes coverage where a bodily injury "is expected or intended by any insured”. The insurer, in its reservation of rights letter, properly cited both the noncoverage "Definitions” section of the policy and its later "Exclusions” section, since the Fauth complaint described the same conduct as both intentional and accidental.
On and after May 25, 1994, however, it would have been clear that the injury inflicted by Chad Weiner upon Fauth was no accident. On that date, after a trial on the merits, Weiner was convicted of assault in the second degree which, of course, requires proof of intent (Penal Law § 120.05 [1]). It is well settled that efforts to adorn an intentional tort cause of action with a companion negligence claim, based on the same act, *833 must fail. "There is no such thing as a negligent assault” (Sanchez v Wallkill Cent. School Dist., 221 AD2d 857, citing Prosser and Keeton, Torts § 10, at 46 [5th ed]).
The insurer, at this point, had been engaged in the defense of Chad Weiner for more than two months and, therefore, must have known of his criminal conviction for the same wrongful act as alleged in the Fauth complaint. The insurer, being responsible for the competent discharge of the duty of defense under its reservation of rights, would have been aware of the conclusive collateral effect of the conviction in relation to the pending civil action. (S. T. Grand, Inc. v City of New York, 32 NY2d 300.)
Consequently, after May 25, 1994, the insurer could have withdrawn its defense on the ground of noncoverage. Alternatively, the insurer could have given a statutory notice of disclaimer based on the exclusion provision. The distinction, and the alternative course of action, are fully described in Zappone v Home Ins. Co. (55 NY 131). The insurer, in fact, did neither.
The plaintiff gave no warning that its duty of indemnification was conditional upon a verdict that Chad Weiner’s conduct was merely negligent. The plaintiff did not explain that Chad Weiner’s criminal conviction rendered any such verdict unlikely, if not impossible. There was no inkling conveyed to the Weiners that the insurer’s loyalties might be tested by the fact that its economic interest would be advanced by a civil verdict that the conduct was intentional, thus permitting the insurer to assert a policy defense to the payment of compensatory damages. Such a verdict, of course, would also expose Chad Weiner to punitive damages, which are not insurable as a matter of New York public policy (Home Ins. Co. v American Home Prods. Corp., 75 NY2d 196, 200).
The criminal conviction should have moved the insurer to assess the new situation and to disclose its conclusions to the putative insureds and the injured party. The insurer might have decided that the exclusion provision governed. In that event, it could have terminated its defense of the Weiners upon notice "as soon as is reasonably possible” after May 25, 1994 in accordance with section 3420 (d) of the Insurance Law. Clearly, the reservation of rights letter was sufficient to negate any suggestion that its defense, up to that date, amounted to a waiver of its rights under the exclusion clause (7C Appleman, Insurance Law and Practice § 4694, at 349 [Berdal ed]).
The insurer, with even greater assurance, could have disclaimed on grounds of noncoverage or noninclusion. In that *834 event, the prompt notice mandate of the Insurance Law would have been inoperative. The Court of Appeals, in Central Gen. Hosp. v Chubb Group of Ins. Cos. (90 NY2d 195, 198), recently reaffirmed the holding in Zappone v Home Ins. Co. (supra, at 137) that the failure of an insurer to give prompt notice of disclaimer under the statute: "does not preclude it from denying liability on a strict lack of coverage ground”.
Clearly, the conduct of Chad Weiner was not an "accident” and, therefore, was not an "occurrence” insured under the plaintiff’s policy. Hence, the insurer was not bound by the "notice as soon as is reasonably possible” language of the Insurance Law which, as noted above, is silent where the policy affords no coverage at all.* That conclusion, however, leaves open the question of whether the insurer, by a protracted course of conduct over the three years following the conviction, may have imposed upon itself a new duty, not governed by the Insurance Law, to deal equitably with the insureds, and the victim of the assault.
Central Gen. Hosp. v Chubb Group of Ins. Cos. (supra) cites, with approval, the earlier opinion of the Court in Schiff Assocs. v Flack (51 NY2d 692). There (at 699) the Court recognized and reaffirmed the relevance of the doctrine of equitable estoppel in the realm of noncoverage cases. We can only assume that the precedents marshalled in support of that proposition in the Schiff opinion (i.e., O’Dowd v American Sur. Co., 3 NY2d 347; Gerka v Fidelity & Cas. Co., 251 NY 51, 57) remain regnant in the law of New York (see also, Spinosa v Hartford Fire Ins. Co., 90 AD2d 574; Hartford Ins. Group v Mello, 81 AD2d 577).
The insurer continued the defense for three years after it must have known of its right to disclaim. It knew, or should have known, that its interests and those of the putative insureds had diverged. These circumstances, in our view, distinguish this case from the conduct of the insurers in Zappone (55 NY2d 131, supra) and Massachusetts Bay Ins. Co. v National Sur. Corp. (215 AD2d 456).
*835 In Zappone (supra), an excess carrier, seeking escape from liability, was given notice of the claim, and promptly issued a reservation of rights letter. Some 15 months later, it disclaimed. At all times, however, the putative insureds were being fully defended by the primary carrier. In Massachusetts Bay (supra,), the disclaiming carrier neither appeared for the putative insured nor defended the claim. Hence, the conduct of the insurers, in each case, gave no false comfort to the policyholders or the third-party claimants. No party in interest could have been misled or otherwise prejudiced by delay in learning the carrier’s ultimate position. Indeed, the posture of the insurers in the two cases would have conveyed clear notice that neither a defense nor an indemnification could be assured.
In sum, a distinction "must be drawn between two lines of authority: the first establishes that insurance coverage cannot be created by the subsequent conduct of the insurer where no coverage can be found in the original contract (Zappone v Home Ins. Co., supra). The second, invoking equity, estops the insurer from asserting the undeniable absence of any such contractual obligation to the insured (Schiff Assocs. v Flack, supra). The conceptual difference between the two doctrines is subtle, but no lawyer familiar with the ceaseless thrust and parry between law and equity will be perplexed. It is well understood, in the Anglo-American common-law tradition, that the remedies of equity were devised to mitigate and, sometimes, to defeat the remorseless application of general legal rules (see, Newman, Place & Function of Pure Equity in the Structure of Law, 16 Hastings L J 401, 403-404).
We recognize, nevertheless, that the application of the doctrine of equitable estoppel, in the realm of noncoverage insurance cases, is not favored. Public policy is not served by exposing the insurer to risks never contemplated by the insuring transaction and never made a factor in the calculation of the premium. However, where the conduct of the insurer, over a protracted period, creates the false impression that coverage is present and fosters the sense that the insurer is united in interest with the insured and has a real stake in the defense of the claim, it should come as no surprise that courts have exhibited a degree of sympathy for the plight of the injured victim, if not for the criminal conduct of the insured.
Mere sympathy for the victim, however, is not enough. The insured must not only show a vulnerability to money damages, but also that the insured has been prejudiced in some significant way by the conduct of the carrier. In our view, the insured *836 has met that burden. Given the preclusive effect of the conviction, the insurer must have known that the "occurrence” alleged by Fauth was not covered by the policy. In consequence, the insurer lost any economic spur to settle the case or to adopt trial tactics which, perhaps, would concede the wrong but plead such mitigating circumstances as might be available to participants in the kind of drunken melee which appears to have occurred in this case.
It now seems settled that the notice requirements of the Insurance Law, where operative, create two duties: first, the insurer is obliged to give prompt notice of a present intent to disclaim in the future, if sufficient grounds should appear in the course of investigating the claim. Second, when the facts and circumstances affecting coverage have been clarified, the insurer is required to reach a prompt decision and to give notice of that decision to its insureds (Presbyterian Hasp. v Maryland Cas. Co., 90 NY2d 274, 282-283, citing Zappone v Home Ins. Co., supra; Allstate Ins. Co. v Gross, 27 NY2d 263, 267).
No precedent has been found which applies the second duty (to disclose the insurer’s position once the coverage facts become known) to a noninclusion case not governed by the prompt notice provision of the Insurance Law. However, the policy considerations which support the rule seem even more compelling in cases, such as this, which cry out for intervention under the doctrine of equitable estoppel.
This declaratory judgment action was not commenced until several weeks after the case had been set down for trial on April 21, 1997 following an April 2, 1997 conference in chambers. Under the unique circumstances present in this case, the commencement of an action for a declaratory judgment, on the eve of trial, is prejudicial as a matter of law. The insurer will not be heard to claim that its policy of insurance does not include the "occurrence” alleged by Fauth, despite the fact that, absent its conduct after May 25, 1994, the "non-inclusion” of the assault might be undeniable.
The Weiner defendants shall submit á declaratory judgment reciting the rights and duties of the parties consistent with the conclusions set forth in this decision. In particular, the judgment should require the plaintiff to resume the defense, offering the Weiners the opportunity to retain their own counsel, at the plaintiff’s expense. Indemnification, if any, must await the results at trial.

 The Weiners and Fauth argue for a finding of insurer liability by á different, more convoluted, and less convincing logic. They contend that the injury was the result of an insured “occurrence” which, however, might have been excluded as an injury which was “intended” or "expected” by any insured. In that event, the Insurance Law would require prompt notice which the insurer failed to give. As a result, the plaintiff would be obliged to defend and indemnify. The argument fails, in our view, at the very outset. The beating was not an insured “occurrence” because, simply, it was not an "accident” (see, Black’s Law Dictionary 15-16 [6th ed 1990]).