Golia, J.,
dissents and votes to affirm the order denying plaintiffs motion for summary judgment in the following memorandum: Before speaking to the particular facts of the matter before me, I am compelled to briefly address, in general terms, the legal analysis of the majority regarding the holding of the Court of Appeals.
In this regard, there are three Court of Appeals cases that are to be considered. The first in time is Zappone v Home Ins. Co. (55 NY2d 131 [1982]) which, as I discuss in detail below, stands for the proposition that literal interpretation of a statute will not be accorded when to do so will produce inequality, injustice or absurdity. It requires a court to look to the purpose of the legislation as a whole rather than its literal words.
The next two cases which are cited by the majority were published at the same time, and, in fact, cross-reference each other. These two cases are Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co. (90 NY2d 274 [1997]) and Central Gen. Hosp. v Chubb Group of Ins. Cos. (90 NY2d 195 [1997]). The majority interprets these two matters as if Presbyterian sets forth the immutable rule on the state of the No-Fault Law and that Chubb carves out a singular exception for traffic incidents staged to defraud.
The majority then creates a simple dichotomy between staged accidents and all other types of intentional fraud, excessive treatment, or overbilling. They see no “legal” distinction between a doctor erring on the side of caution, by providing greater treatment than a more conservative provider would think is necessary, and a doctor falsely billing for items or treatments that were never provided.
I interpret the oft-cited section of Presbyterian noted in the majority opinion as saying that the statute and regulations were written to give the benefit of the doubt to the eligible injured person (and his assignee) in order to avoid protracted dilatory *81 practices that could well be employed by an insurance carrier designed solely to prejudice those making claims. This is true even if this results in the insurer paying ill-founded, illegitimate and fraudulent claims. By this, I believe the Court of Appeals was addressing the need to avoid protracted time-consuming and prejudicial litigation over whether or not an eligible injured person needed 10 treatments instead of five treatments, irrespective of whether the five additional treatments were, in fact, objectively necessary, or overly cautious treatment, or totally unnecessary but honestly prescribed, or was knowingly unnecessary and was provided for the purpose of receiving additional payment, i.e., fraud.
However, reason dictates that it was not meant to mandate the payment of an intentional false claim for treatment, services or medical equipment that was never provided, i.e., pure fraud (classic fraud).
With this said, I turn to the matter at hand.
This case presents a very troublesome issue. It appears from the documents presented in this action that the plaintiffs assignor asserted that he did not receive any of the items for which the plaintiff is now seeking payment. To be perfectly clear, if true, the plaintiff is seeking payment for medical items that were never provided. This is not an instance in which the equipment was provided but “may” not have been medically necessary. Pure logic dictates that if the assignor was never provided with any medical appliances, then it is axiomatic that the provider cannot be compensated for the cost of the items that he did not provide, quite often to the fullest extent of 150% of the documented cost.
This simple axiom is of the same nature as the holding of the Court of Appeals in Central Gen. Hosp. v Chubb Group of Ins. Cos. (90 NY2d 195 [1997], supra). If there was no “accident,” then there can be no obligation to pay no-fault benefits.
The Court of Appeals held in Zappone v Home Ins. Co. (55 NY2d 131 [1982], supra) that timeliness of denial is not dispositive if the subject automobile is not covered by the policy in question. Similarly, I submit, if there is no medical equipment provided then there can be no obligation to pay for that medical equipment which was not provided irrespective of any time limit. The Court in Zappone found that to hold otherwise was to “rewrite the policy to expose [the insurance carrier] to a risk . . . never contemplated by the parties and for which [the insurance carrier] had never been compensated, though the In *82 surance Law requires that a rate commensurate with the risk assumed be charged without deviation or discrimination” (id. at 138).
The majority in Zappone went considerably further than the facts therein and found that the clear language of a statute should not always be afforded a literal interpretation (id. at 137). The decision went on to state:
“In the interpretation of statutes the ‘[a]bsence of facial ambiguity is . . . rarely, if ever, conclusive’ . . . Literal interpretation of the words used will not be accorded when to do so will occasion great inconvenience, or produce inequality, injustice or absurdity . . . It is . . . always presumed that no unjust or unreasonable result was intended and the statute must be construed consonant with that presumption . . . the court looking to the purpose of the legislation as a whole rather than its literal words” (id. [emphasis added]).
I can think of no greater injustice, in the area of civil litigation, than for this court to direct payment for items that never existed, nor any greater absurdity than for this court to insist that it is required to do so under the law. It is my firm and unshakable belief that neither the Legislature nor the Insurance Department ever intended for an insurance carrier, or anyone else for that matter, to be forced to pay for medical equipment that was never provided, and “the statute must be construed consonant with that presumption” (Zappone v Home Ins. Co., 55 NY2d 131, 137 [1982], supra).
It is the most elementary of propositions. Both the Court of Appeals and common sense dictate that there can be no insurance coverage if there was no accident or no policy covering the car involved. The same must hold true if there was no treatment or medical equipment provided at all.
To follow the majority’s holding would be to invite a medical supplier to inundate an insurer with “bogus” claims in hopes that the insurer will fail to deny one within the 30-day limit. Courts would then reward that scheme with a money judgment as against the insurer for upward of 150% of the “documented cost” of medical equipment that was never provided. Most certainly an absurdity and most assuredly an injustice.
It is indeed a sad commentary on the state of jurisprudence for courts to even consider supporting a claim sounding in “classic” fraud, i.e., pure fiction. This is not an example of fraudulent overbilling, or unnecessary treatments.
*83 Although my colleagues deride my use of the term “classic” fraud, they need only look to the criminal term bench to find a plethora of cases that distinguish between “classic” coercion (physical abuse of defendants) used to obtain a confession and all other forms of coercion (preventing contact with an attorney, etc.). I do not consider them to be comparable, but I do believe that there is a clear distinction between the intentional creation of a purely “made up” claim and the possible “over treatment,” intentionally or unintentionally of an otherwise valid claim.
Some courts have held that, under the present state of the law, a defense based on an alleged fraudulent claim by a provider to obtain no-fault benefits will be precluded in the event of a defendant’s untimely denial. I do not- necessarily agree. However, in the instant matter there is a difference. Here the assignor indicated that he never received the medical equipment for which the “provider” is suing to recover payments. I find that, under the facts presented, the majority has either unnecessarily extended the language employed by the Court of Appeals in Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co. (90 NY2d at 285), which held that upon an insurer’s untimely denial even fraudulent claims by a provider are precluded from being raised as a defense by the insurer, or it is an unintended consequence of the language employed by that Court. In either case, I cannot believe the Court of Appeals of the State of New York intended to ratify or support an intentional scheme to charge for “medical items” that were never provided.
Since the Court of Appeals has addressed the issue of fraud in no-fault automobile insurance, it has become all too clear that fraudulent claims are an ever increasing issue that cannot be ignored (see generally State Farm Mut. Auto. Ins. Co. v Mallela, 4 NY3d 313 [2005]; Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854 [2003]). Courts should never be placed in a position to countenance, let alone enforce, an allegedly made-up claim. The majority comforts the carrier with the information that after they are directed by this court to pay for items that were never provided, they have the opportunity to sue for return of the payment and can even file a criminal complaint. Cold comfort indeed.
The senior United States Senator from New York, Charles Schumer, has stated: “If insurance fraud were a business, it’d be a Fortune 500 company” (Schumer Announces New Bill to Make Auto Insurance Fraud a Federal Crime, <http://schumer. senate. gov/SchumerWebsite/pressroom/press_releases/PR00913.html>, *84 cached at <http://www.courts.state.ny.us/reporter/webdocs/ schumer_newbillinsurancefraud.htm>).
Accordingly, the order denying plaintiffs motion for summary judgment should be affirmed.
Pesce, EJ., and Rios, J., concur; Golia, J., dissents in a separate memorandum.