[894 NYS2d 811]

ST. VINCENT MEDICAL CARE, P.C., as Assignee of Crystal Gore, Respondent, v COUNTRY-WIDE INSURANCE COMPANY, Appellant.

Supreme Court, Appellate Term, Second Department, May 8, 2009

APPEARANCES OF COUNSEL

*Jaffe & Koumourdas, LLP,* New York City (*Jean H. Kang* of counsel), for appellant.

## OPINION OF THE COURT

MEMORANDUM.

Judgment modified by reducing the amount of the award to the principal sum of $2,627.90 and by providing that plaintiff's claim for $228.55 for services rendered on February 22, 2006 is severed, so much of the order entered January 23, 2008 as granted plaintiff's motion for summary judgment on the claim for $228.55 is vacated, and the branch of plaintiff's motion which sought summary judgment on that claim is denied; as so modified, judgment affirmed without costs, and matter remanded to the Civil Court for all further proceedings.

In this action by a provider to recover assigned first-party no-fault benefits, the court granted plaintiff's motion for summary judgment on the ground that defendant's verification requests failed to toll the 30-day claim determination periods. With the exception of the claim for $228.55 for medical services provided on February 22, 2006, we agree.

■ A provider generally establishes its prima facie entitlement to summary judgment by proof of the submission of a statutory claim form, setting forth the fact and the amount of the loss sustained, and that payment of no-fault benefits was

overdue (*see* Insurance Law § 5106 [a]; *Mary Immaculate Hosp. v Allstate Ins. Co.*, 5 AD3d 742 [2004]). In the instant case, any deficiency in plaintiff's moving papers regarding proof of mailing of the claim forms was cured by defendant's claim denial forms, and the affidavit of defendant's claims representative in which receipt of the claims in question was conceded (*see East Acupuncture, P.C. v Electric Ins. Co.*, 16 Misc 3d 128[A], 2007 NY Slip Op 51281[U] [App Term, 2d & 11th Jud Dists 2007]; *Oleg Barshay, D.C., P.C. v State Farm Ins. Co.*, 14 Misc 3d 74 [App Term, 2d & 11th Jud Dists 2006]). In addition, a review of the record indicates that plaintiff's affidavit sufficed to establish that the annexed claim forms constituted evidence in admissible form (*see* CPLR 4518; *Dan Med., P.C. v New York Cent. Mut. Fire Ins. Co.*, 14 Misc 3d 44 [App Term, 2d & 11th Jud Dists 2006]). Consequently, the record establishes plaintiff's prima facie entitlement to summary judgment.

In opposition, defendant argued that it timely denied plaintiff's claim seeking to recover the sum of $228.55 for services rendered on February 22, 2006 on the ground that the fee sought was in excess of the amount permitted by the workers' compensation fee schedule because the services for which payment was sought were part of another service and, thus, were not separately reimbursable. Defendant established that it timely denied this claim (*see Residential Holding Corp. v Scottsdale Ins. Co.*, 286 AD2d 679 [2001]; *Delta Diagnostic Radiology, P.C. v Chubb Group of Ins.*, 17 Misc 3d 16 [App Term, 2d & 11th Jud Dists 2007]). Accordingly, plaintiff was not entitled to summary judgment upon this claim.

Defendant also opposed plaintiff's motion for summary judgment on the ground that its verification and follow-up verification requests tolled defendant's claim determination periods. However, since defendant mailed its follow-up requests for verification on the 30th calendar day after it mailed its verification requests, the follow-up requests were premature and without effect (*see* General Construction Law § 20; Insurance Department Regulations [11 NYCRR] § 65-3.6 [b]; *Infinity Health Prods., Ltd. v Eveready Ins. Co.*, 21 Misc 3d 1 [App Term, 2d & 11th Jud Dists 2008]). Accordingly, as to the remaining claims, defendant failed to timely deny same and is precluded from raising most defenses, with exceptions not here relevant (*see Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co.*, 90 NY2d 274, 282 [1997]). Thus, plaintiff was properly granted summary judgment as to the remaining claims. For the forego-

ing reason, defendant's cross motion for summary judgment was properly denied.

GOLIA, J. (dissenting and voting to reverse the judgment, vacate the order entered January 23, 2008, deny plaintiff's motion for summary judgment and grant defendant's cross motion for summary judgment, in the following memorandum). I need not discuss the factual and procedural history of this case as it has, for the most part, been addressed by the majority. Instead, I submit that the majority has erred in its judgment as to a matter of law. It has, in my opinion, misconstrued established principles of common law as well as the Appellate Division's decision in *New York & Presbyt. Hosp. v American Tr. Ins. Co.* (287 AD2d 699 [2001]). In addition, the majority has misinterpreted Insurance Department Regulations (11 NYCRR) § 65-3.6 (b), the contents and purposes of which will be discussed below.

I should first, however, address the majority's reluctance to require that plaintiff submit a proper and complete motion upon which summary judgment could be granted. I submit that the majority's grant of summary judgment in favor of plaintiff is contrary to the Court of Appeals' holding in *Alvarez v Prospect Hosp.* (68 NY2d 320 [1986]). In that case, the Court found that a "[f]ailure to make . . . [a] prima facie showing [of entitlement to judgment as a matter of law] requires a denial of the motion, regardless of the sufficiency of the opposing papers" (*id.* at 324). This well-established principle, with its roots at common law, provides that all assertions made in a summary judgment motion remain unsubstantiated unless they are accompanied by sufficient evidence in admissible form contained within the four corners of the motion papers (*see e.g. Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395 [1957]). In the present case, that principle was not met.

The current state of the law in no-fault cases requires that a plaintiff establish (1) that it mailed a claim, and (2) that payment is overdue. Nothing else. This plaintiff's motion for summary judgment, however, should have been denied inasmuch as its moving papers failed to establish, by a proper affidavit, the mailing of plaintiff's claim forms. The majority of the Appellate Term has often held that the inclusion of an NF-10 denial of claim form in the moving papers is sufficient to establish the mailing of a claim, a proposition with which I have previously disagreed. In the present case, the majority states that "any deficiency in plaintiff's moving papers regarding proof of mailing of the claim forms was cured by defendant's claim denial forms,

and the affidavit of defendant's claims representative." What it does not state is that the NF-10 denial of claim forms were not attached to the moving papers, despite the fact that the moving plaintiff, intentionally or otherwise, asserted that such documents were, in fact, included. The majority then searches the record in order to establish mailing and found the NF-10 denial of claim forms in defendant's opposing papers. Indeed, the Court of Appeals, in *Winegrad v New York Univ. Med. Ctr.* (64 NY2d 851, 853 [1985]), unanimously found that "bare conclusory assertions . . . do not establish that the cause of action has no merit so as to entitle defendants to summary judgment." Clearly, if the moving papers fail to warrant granting summary judgment, then the court should not look to the opposing papers, as was done here. I have found no opposition to this principle except in relation to the no-fault line of cases. Yet, notwithstanding controlling law and the principles outlined in the above-mentioned cases, the majority chooses to establish an exception thereto by finding that while the moving papers are clearly deficient, nevertheless summary judgment should be awarded to the moving plaintiff based upon information obtained from a search of the opposing papers.

I further disagree with the majority's interpretation of Insurance Department Regulations (11 NYCRR) § 65-3.6 (b) (the regulation). This provision states, as relevant here:

"At a minimum, if any requested verifications has [*sic*] not been supplied to the insurer 30 calendar days after the original request, the insurer shall, within 10 calendar days, follow up with the party from whom the verification was requested, either by telephone call, properly documented in the file, or by mail."

In the underlying case, it is uncontroverted that defendant sent timely and properly mailed initial requests for verification and that on the 30th day after the first mailing, not having received the information requested, defendant mailed second requests for verification. There is no assertion that the mailing procedure was insufficient or that defendant actually received the requested items on the 30th day just after the second requests issued. Clearly, defendant did not receive the items requested on the 30th day, or the 31st day, or the 60th day, or at any time, to my knowledge. The issue that we are presently addressing then is: Whether or not defendant's mailing of follow-up requests on the 30th day constitutes a fatal violation

of the language of the regulation, while plaintiff's failure to ever provide the material sought by the requests for verification as required by the regulation is properly excused? I do not believe that form over substance is to be exalted.

I agree with the majority in that there is no dispute regarding the fact that the follow-up requests were mailed to plaintiff on the 30th day after the initial requests were sent. Pursuant to General Construction Law § 20, the 30-day computation period is exclusive of the initial day of sending, i.e., the first day of computation begins on the day after the initial notice was mailed. This said, in judicial decision making, it is imperative that judges give effect to the laws and regulations that have been created or sanctioned by the democratically elected representatives of the people and that it be done in accordance with the intentions behind their creation insofar as such enforcement does not occasion "great inconvenience, or produce inequality, injustice or absurdity" (*Zappone v Home Ins. Co.*, 55 NY2d 131, 137 [1982]). To selectively choose segments of the body of no-fault regulations and then to enforce them solely against the defendant and not the plaintiff is to eviscerate the doctrine of the separation of powers as enshrined in the State Constitution. Under the rubric of that doctrine, this court is bound to give effect to the disputed regulation as intended by the Insurance Department and not according to its own interpretation.

In addition, *Zappone* also elucidates what should always be the very essence of the judicial prerogative, i.e., the promotion of justice, the cornerstone of which is *fairness*. In expressing this principle, the majority in *Zappone* held that it is "always presumed that no unjust or unreasonable result was intended and the statute must be construed consonant with that presumption" (*id.*). Therefore, we should not create additional hurdles for a defendant to traverse that are not already included in the regulation, as promulgated by the Insurance Department, or in legislation.

In further support of this proposition, it is instructive to examine the intent of the Insurance Department in drafting Insurance Department Regulations (11 NYCRR) § 65-3.6 (b). I ardently believe that the Insurance Department's reasoning behind section 65-3.6 (b) was to ensure that a claimant be given adequate notice of, and the opportunity to respond to, a verification request, inasmuch as a claim is not considered complete until the verification request is answered (Insurance Depart-

ment Regulations [11 NYCRR] § 65-3.8 [b] [3]). The follow-up request serves as a reminder to the provider that the actual initial request remains open and unanswered. Otherwise, the insurance company would be pleased to wait forever to receive a response to the verification request. If there is no response, the 30-day time limit to pay or deny a claim never begins. I believe that the regulation was never intended to add another layer of judicial interpretation, a default of which would result in an automatic judgment given to a plaintiff who has utterly failed or refused to provide any verification of the genuineness of its claim. This is particularly so when one casts one's mind back to the reason behind the creation of the no-fault system in the first instance, which was to speed up the resolution of all claims as well as the undeniable and inexcusable level of unchecked and unchallenged fraudulent no-fault claims.

The latest available New York State Insurance Department Annual Report to the Governor and the Legislature of the State of New York on the Operations of the Insurance Frauds Prevention Act (Report), dated January 15, 2008, states that of the 22,079 Insurance Frauds Bureau (IFB) insurance fraud reports received in 2007, 11,242 of those claims were no-fault related. This is particularly staggering considering that there were 34 different categories of insurance fraud recorded and included in that data. Excluding the no-fault-related IFB reports, the average number of reports of fraud per different category of insurance fraud was approximately 328. In simpler terms, out of the 34 possible categories of insurance fraud, approximately 51% of those reports received by the Insurance Department in 2007 pertained to the singular category of no-fault auto insurance (see Report). The disparity between the numbers of fraudulent no-fault reports in comparison to other categories of insurance fraud in 2007 is both unambiguous, inexcusable and unsustainable. I suggest that the number for the year 2008 will be no less damning.

The Comprehensive Automobile Insurance Reparations Act of 1973 was enacted to force downward pressure on insurance premiums and alleviate the already overburdened court system through stemming what was then considered a rampant tide of insurance claims. Due to an unexpected and exponential rise in no-fault fraud since the system's inception, that flood has now grown into a tsunami of fraudulent activity. Those fraudulent claims cannot be discouraged, or indeed stopped, by awarding summary judgment in favor of plaintiff providers without them

first having to satisfy the conditions precedent required of them by law. More specifically, and with reference to the case in point, despite plaintiff's failure to tender any adequate and admissible evidence to prove defendant's receipt of the initial claim form, the majority herein searched the opposing papers to satisfy plaintiff's evidentiary burden in lieu of plaintiff satisfying the burden itself as required by statute or Court of Appeals' precedent and indeed common sense. My colleagues' willingness to discount plaintiff's complete disregard of its obligation to provide verification of the claim and then to award plaintiff summary judgment, notwithstanding an initial and timely request for verification in admissible form by defendant, can, I submit, further encourage the rise of fraudulent claims.

Anyone who has even a modicum of familiarity with the no-fault regulations will note the distinction between the strict protocols for filing claims and issuing denials on the proper forms, and this particular regulation, which provides for a follow-up verification by a "telephone call" which need only be "documented in the file." I am unaware of any other set of protocols in the no-fault regulations which provide for a follow up by a telephone call and which need only be documented in the insurer's own file. Such comparative leniency lends support, at least to me, to the view that the *sole purpose* of Insurance Department Regulations (11 NYCRR) § 65-3.6 (b) is to ensure that the claimant is made aware that there is an outstanding unsatisfied request for verification so that it might supply such information to the insurer in order to complete the claim and begin the 30-day time limit for payment, denial or a further request for verification.

When consideration is given to the justness and reasonableness of the state of the No-Fault Law in New York as it currently stands, one must be struck by the inequality of responsibilities between provider and insurer. The double standard that currently exists in relation to time limits is neither hidden nor excused. Currently, pursuant to Insurance Department Regulations (11 NYCRR) § 65-1.1, "Conditions," the period of time in which a claimant provider has to file a claim after the date of treatment is not strictly enforced provided there is a "clear and reasonable justification" for the delay. Indeed, if the insurer denies the claim without informing the claimant of its right to present such excuse, the denial is deemed invalid. This is in stark contrast to the majority's contention that defendant should be liable to compensate plaintiff for unverified, unsub-

stantiated claims for medical services because it sent follow-up verification requests on the 30th, instead of the 31st day after sending its initial requests. This is so despite the first requests being legitimate, in that they were both sent on time and in proper form. This is so despite the fact that the clear and sole intention of the disputed regulation was to ensure that the provider is made aware of the pending request for verification and not, as the majority would have it, to have defendant suffer a preclusion and an award of summary judgment in favor of the plaintiff because defendant, arguably, sent follow-up requests less than 24 hours earlier than what was stipulated in the regulation.

In effect, the early service of a follow-up request causes no prejudice to a plaintiff as it is not bound by any time restraints similar to those that burden a defendant. Had the regulation required a plaintiff claimant to respond to verification requests within 30 days of receipt, it is conceivable that the early mailing of a follow-up request would deny a plaintiff the full period of time to which it was entitled. Consequently, it could constitute unfair grounds for summary judgment to be entered in favor of a defendant. However, the no-fault regulations, as written, impose no time limit on a plaintiff to respond to the verification request. The obvious reason is that it is in a plaintiff's best interest to provide the verification as quickly as practicable so as to trigger the 30-day clock in which the insurer must pay or deny the claim. In the present circumstances, however, plaintiff, who still reasonably received the second notice of the pending verification, as was the original intention of the regulation, suffered no detriment and no prejudice as a result of the early mailing.

PESCE, P.J., and RIOS, J., concur; GOLIA, J., dissents in a separate memorandum.