[837 NYS2d 350]

FAIR PRICE MEDICAL SUPPLY CORP., as Assignee of CESAR NIVELO, Respondent, v TRAVELERS INDEMNITY COMPANY, Appellant.

Second Department, June 12, 2007

### APPEARANCES OF COUNSEL

*Karen C. Dodson*, New York City (*Carol R. Finocchio* of counsel), for appellant.

*Alden Banniettis*, Brooklyn (*Jeff Henle* of counsel), for respondent.

*Thomas Torto*, New York City, amicus curiae, for American Insurance Association and another.

*Rivkin Radler, LLP*, Uniondale (*Evan H. Krinick, Cheryl F. Korman* and *Stuart M. Bodoff* of counsel), amicus curiae, for New York Insurance Association.

### OPINION OF THE COURT

PRUDENTI, P.J.

The question presented on this appeal is whether an insurance carrier is precluded from interposing a defense in an action to recover assigned first-party no-fault benefits if it fails to pay or deny the claim within 30 days, where it has reason to believe that the claim fraudulently seeks reimbursement for medical supplies that were never delivered to the insured. Because the carrier's proposed defense in this case is not based on a lack of insurance coverage, this question must be answered in the affirmative.

The insured, Cesar Nivelo, allegedly was injured in an automobile accident on May 8, 2001. In May and June 2001, pursuant to prescriptions from a physician and a chiropractor, the plaintiff, Fair Price Medical Supply Corp., allegedly furnished to Nivelo various medical supplies, including a Transcutaneous Electrical Nerve Stimulator (referred to in the record as a TENS unit), an infrared heat lamp, a massager, a thermophore (heating pad), a cervical pillow, and a lumbosacral support. Nivelo assigned to the plaintiff his right to recover the cost of the medical supplies from the defendant, Travelers Indemnity Company, Nivelo's no-fault insurance carrier. The "Assignment of Benefits" forms executed by Nivelo set forth a list of the prescribed medical supplies under the heading "Equipment Delivered," and under the subheading "I have received [the] following supplies." On September 18, 2001, and October 13, 2001, the plaintiff submitted claims for first-party

no-fault benefits to the defendant, itemizing the supplies it had allegedly delivered to Nivelo and seeking reimbursement in the total sum of "$1,638.98 [sic]." The defendant requested letters of medical necessity, which the plaintiff supplied on November 6, 2001.

The defendant never paid the claims, and did not deny the claims until August 15, 2003, after the plaintiff resubmitted them. The defendant's denial of the claims was based upon a statement by Nivelo in which, according to the defendant, he "denied receiving any medical supplies" as a result of the injuries he sustained in the subject accident. The statement cited by the defendant appeared in a 10-page questionnaire supplied by the defendant, entitled "No Fault Statement," which was signed by Nivelo and dated October 4, 2001. Item number 190 on the form asked: "What medical supplies did you receive? (electric massager) (Velcro back brace) (neck brace) (Left/right knee brace) (Crutch) (cane) (Dental brace) (Mattress) (car seat) (neck pillow) (whirlpool) (heating pad) (infer-red [sic] heat lamp) (tens unit) (left/right Wrist brace) Other _____." On the blank line at the end of the question, the word "none" was handwritten.

The plaintiff commenced this action in the Civil Court of the City of New York, Kings County, to recover the cost of the medical supplies it allegedly furnished to Nivelo, as well as attorney's fees. The defendant asserted, as one of its affirmative defenses, that the plaintiff's claims "were properly denied by Defendant based upon a statement from Cesar Nivelo that no supplies were ever furnished by Plaintiff to Mr. Nivelo." The plaintiff subsequently moved for summary judgment on the complaint. In opposition, the defendant submitted, inter alia, the "No Fault Statement" signed by Nivelo, and argued that there was a triable issue of fact as to whether the prescribed medical supplies were ever delivered to Nivelo. The Civil Court, among other things, denied the plaintiff's motion, concluding that the defendant had raised a triable issue of fact as to whether Nivelo had received the medical supplies in question, and that its untimely denial of coverage would not preclude it from raising a defense of fraud.

The plaintiff appealed, and the Appellate Term of the Supreme Court, Second and Eleventh Judicial Districts, in a 2-1 decision, reversed the order of the Civil Court insofar as appealed from, granted the plaintiff's motion for summary judgment, and remitted the matter to the Civil Court for a calcula-

tion of statutory interest and an assessment of attorney's fees. The Appellate Term majority concluded that, since the defendant's claim of fraud was not a defense based on a lack of coverage, the defendant's failure to deny or pay the plaintiff's claims in a timely fashion precluded it from asserting its defense, and the plaintiff was therefore entitled to summary judgment. The Appellate Term dissent asserted that the majority's ruling resulted in an "absurdity" and an "injustice," in that it compelled the defendant to pay an allegedly "made-up claim" which was the product of "pure fraud." In the dissent's view, the claim in this case should have been treated the same as a fraudulent claim based on a staged automobile accident, the untimely denial of which would not result in preclusion. The defendant, by permission of the Appellate Term, appeals to this Court.

When an eligible covered person, or that person's assignee, submits to an insurer a claim for first-party no-fault automobile insurance benefits, the insurer is required to either pay the claim or deny it within 30 days after the applicant supplies proof of claim (*see* Insurance Law § 5106 [a]; 11 NYCRR former 65.15 [g] [3]). Amounts not paid within the 30-day time frame are "overdue," and the applicant may commence an action against the insurer to recover such amounts (Insurance Law § 5106 [a]). In such an action, an insurer that has failed to either pay or deny the claim within the 30-day period may be precluded from interposing a defense (*see Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co.*, 90 NY2d 274 [1997]; *New York & Presbyt. Hosp. v Allstate Ins. Co.*, 30 AD3d 492 [2006]; *Nyack Hosp. v State Farm Mut. Auto. Ins. Co.*, 11 AD3d 664 [2004]).

In *Zappone v Home Ins. Co.* (55 NY2d 131 [1982]), the Court of Appeals explained that whether a failure to timely disclaim coverage will result in preclusion depends upon the insurer's reason for not paying the claim. The insurer in that case advised the insureds, in an untimely fashion, that it would not provide coverage for the subject accident because the automobile involved in the accident was not covered under the insureds' automobile liability policy with the insurer. The Court of Appeals held that, under former Insurance Law § 167 (8) (the predecessor of Insurance Law § 3420 [d]), the insurer was not precluded from denying coverage. The Court concluded that, although preclusion is an appropriate consequence of an insurer's failure to promptly assert its right to invoke a policy exclusion and deny a claim, such a failure cannot operate to create insurance coverage where none otherwise existed. The Court

explained that the requirement that an insurer promptly deny coverage "refer[s] to denial of liability predicated upon an exclusion set forth in a policy which, without the exclusion, would provide coverage for the liability in question. It does not encompass denial that the policy as written could not have covered the liability in question under any circumstances" (*Zappone*, 55 NY2d at 134). The requirement of a prompt disclaimer, and the attendant remedy of preclusion, were not designed "to provide an added source of indemnification which had never been contracted for and for which no premium had ever been paid" (*id.* at 137). Thus, where an insurer is entitled to deny a claim based on an absence of coverage, its failure to timely disclaim coverage does not preclude it from denying liability on that ground.

In *Matter of Worcester Ins. Co. v Bettenhauser* (95 NY2d 185 [2000]), the Court of Appeals restated the *Zappone* rule as follows:

> "Disclaimer pursuant to [Insurance Law § ] 3420 (d) is unnecessary when a claim falls outside the scope of the policy's coverage portion. Under those circumstances, the insurance policy does not contemplate coverage in the first instance, and requiring payment of a claim upon failure to timely disclaim would create coverage where it never existed. By contrast, disclaimer pursuant to section 3420 (d) is necessary when denial of coverage is based on a policy exclusion without which the claim would be covered" (95 NY2d at 188-189).

In a pair of cases decided together in 1997, the Court of Appeals applied the holding of *Zappone* in the context of no-fault insurance. In *Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co.* (90 NY2d 274 [1997], *supra*), the insurer, after failing to timely deny the claim filed by the assignee of an automobile accident victim, sought to assert as a defense a statutory exclusion based on the victim's intoxication at the time of the accident. In *Central Gen. Hosp. v Chubb Group of Ins. Cos.* (90 NY2d 195 [1997] [hereinafter *Chubb*]), where the insurer similarly failed to timely deny a claim, the Court of Appeals addressed two defenses asserted by the insurer: (1) that the injured person's condition and hospitalization were not related to the subject accident, but instead were attributable to a work-related accident that had occurred a year earlier, and (2) that the medical treatment provided by the assignee hospital was

excessive. In *Presbyterian*, the Court held that the insurer was precluded from interposing its defense, since its basis for denying coverage was not an absence of coverage, but an exclusion from coverage. In *Chubb*, the Court held that the insurer was precluded from interposing the defense based on excessive treatment, but was not precluded from defending on the ground that the injuries for which the patient was treated did not arise from the subject accident, since, if the latter allegation was true, the treatment provided was not covered under the insurer's policy with the injured person.

In *Chubb*, the Court reiterated the distinction articulated in *Zappone* between the denial of a claim based upon "a policy exclusion and a breach of a policy condition" and the denial of a claim based on an insurer's assertion that it has "no contractual relationship with respect to the subject vehicle and incident" (90 NY2d at 200). Applying that distinction to the facts of *Chubb*, the Court

> "differentiate[d] between Chubb's arguable defense that the allegedly causative event was not covered at all and its assertion that the hospital treatments were medically excessive. The latter type of excusal from payment of some part of no-fault benefits—a matter of degree at best—does not ordinarily constitute the kind of lack of coverage classification contemplated or implicated by *Zappone*. Thus, an excessive medical treatments assertion should not provide dispensation from usual and pertinent Insurance Law time notification requirements and might suffer a preclusion remedy for violations" (*id.* at 202).

Thus, although *Chubb* was exempt from the statutory 30-day time limit insofar as it asserted that the treatment for injuries suffered in a prior accident was not covered by the subject insurance policy, the Court declined to "extend this exceptional exemption to excuse Chubb's untimely defense in relation to the treatment being deemed excessive by the insurer" (*id.* at 199).

In *Presbyterian*, the Court discussed the rationale for applying the potentially harsh remedy of preclusion against insurers in the context of no-fault insurance claims:

> "No-fault reform was enacted to provide prompt uncontested, first-party insurance benefits. That is

part of the price paid to eliminate common-law contested lawsuits. Indeed, contrary to the insurer's assertions, preclusion of this type was an available remedy at common law, and if this important facet of the juridical rights and remedies among the various interested parties is to be deemed eliminated, it must be evident more plainly and expressly as this would be in derogation of a common-law protection. The tradeoff of the no-fault reform still allows carriers to contest ill-founded, illegitimate and *fraudulent* claims, but within a strict, short-leashed contestable period and process designed to avoid prejudice and red-tape dilatory practices" (90 NY2d at 285 [emphasis added and citation omitted]).

The rules developed in the foregoing decisions have been applied to excuse an insurer's failure to timely pay or deny fraudulent claims that arise out of staged automobile accidents (*see Matter of Allstate Ins. Co. v Massre,* 14 AD3d 610 [2005]; *State Farm Mut. Auto. Ins. Co. v Laguerre,* 305 AD2d 490 [2003]; *Matter of Metro Med. Diagnostics v Eagle Ins. Co.,* 293 AD2d 751 [2002]). The rationale for such holdings is that a deliberate collision that is caused in furtherance of an insurance fraud scheme is simply not an "accident" covered by the subject insurance policy.

In this case, the defendant received the first claim in September 2001, and received the second claim in October 2001. The defendant never paid the claims, and did not issue a denial of the claims until August 2003. Thus, the defendant's denial of the claims was untimely, and the general rule dictates that the defendant is precluded from asserting any defense in the plaintiff's action to recover the claimed no-fault benefits.

The *Zappone* exception to the preclusion rule does not apply in this case. The defendant asserts that it is not required to reimburse the plaintiff for the subject medical supplies because the supplies were never delivered to Nivelo. The defendant, however, does not deny that the cost of the medical supplies in question was an expense for which Nivelo's insurance policy afforded coverage. Thus, its proposed defense is not based on a lack of coverage (*but see Allstate Ins. Co. v Valley Physical Medicine & Rehabilitation, P.C.,* 475 F Supp 2d 213, 225-227 [2007]). The defendant's allegation, i.e., that the plaintiff billed for supplies it never furnished, is more akin to a claim of overbilling (albeit an extreme form thereof). In any event,

regardless of the particular label attached to the plaintiff's alleged conduct, the generally applicable rule is that an insurer's untimely payment or denial of a claim results in preclusion (*see Presbyterian*, 90 NY2d at 283, 285), and it is incumbent upon the insurer to establish that it is excused from compliance with the 30-day rule because "the insurance policy does not contemplate coverage in the first instance" (*Matter of Worcester Ins. Co. v Bettenhauser, supra* at 188). Here, the defendant made no such showing.

Contrary to the defendant's contention, the alleged fraud in this case, no matter how egregious, was not related to the existence of coverage in the first instance. The plaintiff's alleged failure to furnish services or supplies has no bearing on whether coverage for such services or supplies existed in Nivelo's insurance policy. Thus, enforcing the preclusion rule in this case does not have the effect of creating coverage that did not otherwise exist. The defendant seizes upon the undeniable fact that if the medical supplies were not actually furnished to Nivelo, it had no obligation to pay for them. The same is true, however, in cases where the insurer asserts a policy exclusion as a defense. For example, in *Presbyterian*, the insured allegedly was driving her vehicle while intoxicated, which, under the terms of her insurance policy, completely extinguished the insurer's obligation to pay her claim. Yet, the failure of the insurer in that case to timely deny the claim precluded it from interposing its defense based on the insured's intoxication. In short, while the preclusion rule must not be applied so as to create *coverage* where none otherwise existed, it may be applied so as to create *an obligation to pay* where none otherwise existed.

The defendant argues that there is no meaningful distinction between a fraud consisting of a complete failure to furnish medical supplies and a fraud consisting of staging an accident. This argument, however, is flawed. In this case, unlike a staged-accident case, there was an actual automobile accident, which caused Nivelo to sustain actual injuries, for which he was treated by actual health care providers, who issued actual prescriptions for medical supplies to treat his injuries. Nivelo's undisputedly real accident and resulting injuries triggered the coverage provided for in his insurance policy with the defendant. What excuses the insurer's compliance with the 30-day rule in a staged-accident case is not the egregiousness of the fraud; rather, it is the absence of coverage for something that is not an "accident." In a staged-accident case, coverage is never

triggered, whereas in this case, the coverage legitimately came into existence, and the alleged fraud did not occur until later. Thus, enforcing the 30-day rule against the defendant in this case does not "create coverage where it never existed" (*Matter of Worcester Ins. Co. v Bettenhauser, supra* at 188).

Accordingly, the contention of one of the amici curiae on this appeal that the ruling of the Appellate Term majority "creat[es] an artificial distinction between various kinds of fraud schemes" is beside the point. In determining whether compliance with the 30-day rule is required, the pertinent inquiry is whether the asserted defense is based on a lack of coverage. The kind of fraud scheme involved—and whether there is any fraud scheme at all—is irrelevant.

The defendant inaptly characterizes the Appellate Term's ruling in this case as "tacitly condon[ing] fraudulent activity by a medical provider." To the contrary, the rule applied by the Appellate Term majority does not prevent insurance carriers from resisting insurance fraud; it simply requires them to assert a claim of fraud within 30 days after receiving a claim. This is not an unduly burdensome requirement. In this case, for example, the defendant obtained from Nivelo the "No Fault Statement," which purportedly revealed that no medical supplies had been delivered to him, on October 4, 2001, approximately 16 days after the submission of the first claim, and approximately 9 days *before* the submission of the second claim. Thus, the defendant had ample opportunity to deny the claims on fraud grounds within the 30-day statutory time limit. Neither the defendant nor any of the amici curiae identifies any impediment preventing insurers from conducting similar investigations in other cases involving claims for reimbursement for medical supplies. We find it doubtful that an insurer, in detecting the type of fraud alleged in this case, will often need to do more than the defendant did here, i.e., simply ask the insured whether he or she received the medical supplies in question.

Moreover, the defendant's argument seems to suggest that an insurer's failure to timely deny a claim should be excused whenever it alleges any type of "fraudulent activity"—presumably including minor overbilling or the provision of medically unnecessary treatment or supplies. This would carve out a very broad exception to the 30-day rule, and would go far toward undermining the no-fault law's objective of "providing for prompt payment or disclaimers of claims" (*Presbyterian*, 90 NY2d at 284). Although the fraud and abuse that plagues the no-fault insur-

ance system is a serious problem with widespread consequences (*see Matter of Medical Socy. of State of N.Y. v Serio,* 100 NY2d 854, 861-862 [2003]), we do not believe that the solution lies in a judicial pronouncement effectively eliminating the 30-day rule in cases where a fraud defense is asserted.

In sum, while the defendant certainly was entitled to contest the plaintiff's claim as fraudulent, it was required to do so within the rules of the no-fault system, which impose "a strict, short-leashed contestable period and process designed to avoid prejudice and red-tape dilatory practices" (*Presbyterian,* 90 NY2d at 285). Since the defendant failed to pay or deny the plaintiff's claim within 30 days, and its proposed defense is not based on a lack of coverage, the plaintiff established as a matter of law that the defendant was precluded from interposing a defense in this action. In response, the defendant failed to raise a triable issue of fact. Thus, the Appellate Term majority correctly determined that the plaintiff was entitled to summary judgment.

The defendant's remaining contention regarding the admissibility of the "No Fault Statement" signed by Nivelo has been rendered academic in light of our determination.

For the foregoing reasons, we affirm the order of the Appellate Term.

MASTRO, SANTUCCI and DILLON, JJ., concur.

Ordered that the order is affirmed, with costs.