10 N.Y.3d 556 (2008)
890 N.E.2d 233
860 N.Y.S.2d 471
FAIR PRICE MEDICAL SUPPLY CORP., as Assignee of CESAR NIVELO, Respondent,
v.
TRAVELERS INDEMNITY COMPANY, Appellant.
Court of Appeals of the State of New York.
Argued April 30, 2008.
Decided June 5, 2008.
*557 Law Offices of Karen C. Dodson, New York City (Carol R. Finocchio of counsel), for appellant.
*558 Law Office of Alden Banniettis, Brooklyn (Jeff Henle of counsel), for respondent.
Short & Billy, P.C., New York City (Skip Short of counsel), for New York Central Mutual Fire Insurance Company and others, amici curiae.
*559 Rivkin Radler LLP, Uniondale (Evan H. Krinick, Cheryl F. Korman, Barry I. Levy, Stuart M. Bodoff and Max Gershenoff of counsel), for New York Insurance Association, Inc., amicus curiae.
Chief Judge KAYE and Judges CIPARICK, GRAFFEO and JONES concur with Judge READ; Judge SMITH dissents in a separate opinion in which Judge PIGOTT concurs.

OPINION OF THE COURT
READ, J.
Cesar Nivelo was injured on May 8, 2001 when the car that he was driving was rear-ended. On May 9, 2001, a chiropractor *560 prescribed certain durable medical equipment and orthotic appliances to alleviate his pain and speed his recovery; on June 18, 2001, a physiatrist prescribed additional orthopedic devices and portable physiotherapeutic equipment for Nivelo. Plaintiff Fair Price Medical Supply Corporation claims to have furnished Nivelo with all these items, which included a transcutaneous electrical nerve stimulator, an infrared heat lamp, a massager, a heating pad, a cervical pillow, and a lumbosacral support. On May 11, 2001 and June 22, 2001, Nivelo executed "Assignment of Benefits" forms to transfer to Fair Price his right to recover the cost of these medical supplies. The forms enumerated the prescribed items under the heading "Equipment Delivered" and the subheading "I have received [the] following supplies."
By claims dated September 18, 2001 and October 13, 2001, Fair Price asked for payment of Nivelo's no-fault benefits from defendant Travelers Indemnity Company, his no-fault insurance carrier. These two claims itemized the medical supplies allegedly received by Nivelo in May and June 2001, and sought reimbursement in the total amount of $1,638.98. By letter dated September 26, 2001, Travelers informed Fair Price that it was "unable to process" the claim for services rendered Nivelo in May 2001 "[p]ending verification of the facts of the loss including statements from all parties involved" and "a letter of medical necessity for Supplies." By the same form letter dated October 19, 2001, Travelers also requested a letter of medical necessity for the supplies claimed to have been furnished to Nivelo in June 2001.
On November 6, 2001, Fair Price mailed Travelers the requested letters of medical necessity from the chiropractor and the physiatrist, as well as consultation reports from the physiatrist and the internist who referred Nivelo to the physiatrist. Travelers did not pay the two claims, and did not deny them until August 15, 2003nearly two years after they were first submitted.[1]
Travelers' denial was based upon item number 190 in a 10-page questionnaire entitled "No Fault Statement," dated October 4, 2001, less than 30 days after Fair Price made the first claim, and nine days before it made the second one. Item *561 number 190 asked "What medical supplies did you receive?" In response, the word "none" was handwritten. The questionnaire purported to record information given by Nivelo to Travelers' investigator, and was signed by Nivelo, a witness and a Spanish translator.
By summons and complaint dated August 26, 2003, Fair Price commenced this action in the Civil Court of the City of New York to recover the cost of the medical supplies it claimed to have provided Nivelo in May and June 2001. In an answer dated October 14, 2003, Travelers pleaded, as one of its affirmative defenses, that Fair Price's request for reimbursement was "properly denied by [Travelers] based upon a statement from Cesar Nivelo that no supplies were ever furnished by [Fair Price] to Mr. Nivelo."
Fair Price subsequently moved and Travelers cross-moved for summary judgment. Travelers took the position that, at a minimum, the "No Fault Statement" created a triable issue of fact as to whether Nivelo ever received the prescribed medical supplies. Travelers argued further that the defense of fraud was available even assuming its disclaimer was insufficient or untimely. In a decision and order dated March 3, 2004, Civil Court denied both motions on the ground that Travelers had raised a triable issue of fact, and that Travelers' untimely denial of coverage did not preclude it from asserting fraud as a defense. Fair Price appealed.
The Appellate Term, with one Justice dissenting, reversed Civil Court's order denying Fair Price summary judgment, granted the motion in the principal sum of $1,628.98, and remanded the case for a calculation of statutory interest and attorneys' fees pursuant to Insurance Law § 5106 (a) and its implementing regulations. The two-Justice majority opined that the "clear implication" of Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co. (90 NY2d 274 [1997]) was that "a defense based on a provider's alleged fraudulent claim for no-fault benefits is precluded by an insurer's failure effectively to invoke its remedies in the `contestable period,' one of the `tradeoff[s] of the no-fault reform' which the Legislature recognized as the cost of providing `prompt uncontested, first-party insurance benefits'" (Fair Price Med. Supply Corp. v Travelers Indem. Co., 9 Misc 3d 76, 78-79 [App Term, 2d & 11th Jud Dists 2005], quoting Presbyterian, 90 NY2d at 285 [alteration in Appellate Term opinion]). The dissenting Justice protested that this reading of Presbyterian "mandate[d] the payment of an intentional *562 false claim for treatment, services or medical equipment that was never provided, i.e., pure fraud (classic fraud)" (Fair Price Med. Supply Corp., 9 Misc 3d at 81 [Golia, J., dissenting]). The Appellate Term subsequently granted Travelers permission to appeal to the Appellate Division.
The Appellate Division unanimously affirmed, noting that
"[i]n this case, unlike a staged-accident case, there was an actual automobile accident, which caused Nivelo to sustain actual injuries, for which he was treated by actual health care providers, who issued actual prescriptions for medical supplies to treat his injuries. Nivelo's undisputedly real accident and resulting injuries triggered the coverage provided for in his insurance policy with the defendant" (Fair Price Med. Supply Corp. v Travelers Indem. Co., 42 AD3d 277, 284 [2d Dept 2007]).
"In sum," the Appellate Division concluded, "while [Travelers] certainly was entitled to contest [Nivelo's] claim as fraudulent, it was required to do so within the rules of the no-fault system," which impose tight deadlines (id. at 286). The Appellate Division thereafter granted Travelers leave to appeal, and asked us whether its opinion and order was properly made. We now affirm, and answer the certified question "Yes."
Just recently, in Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co. (9 NY3d 312 [2007]), we discussed the legal framework governing this appeal. There, we noted that "New York's no-fault automobile insurance system is designed `to ensure prompt compensation for losses incurred by accident victims without regard to fault or negligence, to reduce the burden on the courts and to provide substantial premium savings to New York motorists'" (id. at 317, quoting Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854, 860 [2003] [upholding regulations reducing time frames for claiming and proving entitlement to no-fault benefits]). "In furtherance of these goals, the Superintendent of Insurance has adopted regulations implementing the No-Fault Law (Insurance Law art 51), including circumscribed time frames for claim procedures" (Hospital for Joint Diseases, 9 NY3d at 317). We described the basic no-fault regime as follows:
"The[ ] regulations require an accident victim to submit a notice of claim to the insurer as soon as practicable and no later than 30 days after an accident *563 (see 11 NYCRR 65-1.1, 65-2.4 [b]). Next, the injured party or the assignee . . . must submit proof of claim for medical treatment no later than 45 days after services are rendered (see 11 NYCRR 65-1.1, 65-2.4 [c]). Upon receipt of one or more of the prescribed verification forms used to establish proof of claim, . . . an insurer has 15 business days within which to request `any additional verification required by the insurer to establish proof of claim' (11 NYCRR 65-3.5 [b]). An insurer may also request `the original assignment or authorization to pay benefits form to establish proof of claim' within this time frame (11 NYCRR 65-3.11 [c]). Significantly, an insurance company must pay or deny the claim within 30 calendar days after receipt of the proof of claim (see Insurance Law § 5106 [a]; 11 NYCRR 65-3.8 [c]). If an insurer seeks additional verification, however, the 30-day window is tolled until it receives the relevant information requested (see 11 NYCRR 65-3.8 [a] [1])" (Hospital for Joint Diseases, 9 NY3d at 317 [footnotes omitted]).
Finally, we reviewed the "substantial consequences" of "[a]n insurer's failure to pay or deny a claim within 30 days" (id.). First, "[b]y statute, overdue payments earn monthly interest at a rate of two percent and entitle a claimant to reasonable attorneys' fees incurred in securing payment of a valid claim (see Insurance Law § 5106 [a])" (Hospital for Joint Diseases, 9 NY3d at 317-318). Citing Presbyterian, we emphasized that even "[m]ore importantly, a carrier that fails to deny a claim within the 30-day period is generally precluded from asserting a defense against payment of the claim" (id. at 318). Referring to Central Gen. Hosp. v Chubb Group of Ins. Cos. (90 NY2d 195 [1997]), we cautioned that the only exception to this preclusion remedy was a "narrow" one for those "situations where an insurance company raises a defense of lack of coverage" (Hospital for Joint Diseases, 9 NY3d at 318).
"In such cases, an insurer who fails to issue a timely disclaimer is not prohibited from later raising the defense because the insurance policy does not contemplate coverage in the first instance, and requiring payment of a claim upon failure to timely disclaim would create coverage where it never existed" (id. [citation and internal quotation marks omitted]; see also Zappone v Home Ins. Co., 55 NY2d 131 [1982] [Insurance *564 Law § 167 (8) (superseded by Insurance Law § 3420 [d]) does not require notice of denial of coverage where policy insured neither person nor automobile involved in accident]). As we explained,
"[i]n Chubb, the insurer asserted as a defense that the claimant's injuries arose out of a prior work-related accident rather than a car accident. Alternatively, the carrier refused payment on the ground that the patient's treatment was excessive. We held that the insurer was not barred from arguing that the injuries were unrelated to the accident because, if true, the treatment would not have been covered by the automobile liability policy in the first instance. On the other hand, we indicated that an excessive treatment defense ordinarily does not implicate a coverage issue, in which situation the preclusion rule applies" (Hospital for Joint Diseases, 9 NY3d at 319, citing Chubb, 90 NY2d at 199).
Thus, the key issue hereas was also the case in Hospital for Joint Diseasesis whether the facts fit within the narrow no-coverage exception to the preclusion rule. Travelers argues that they do, and so it is "irrelevant" that Fair Price's claims were pending for nearly two years before Travelers finally denied them. Specifically, Travelers argues
"where . . . the medical supplies and equipment for which the plaintiff provider is suing to recover payments were never provided to the insured-assignor, there is no coverage in the first instance, and a defense of fraud based upon the plaintiff provider's failure to provide the supplies and equipment cannot be waived, even if its denial of claim was untimely."
But there are important differences between this case and Chubb. As already noted, the majority in Chubb emphasized the "narrow[ ] . . . sweep" of the exception for "denial[s] of claims. . . premised on a lack of coverage" (90 NY2d at 199). Moreover, the relevant statutory language reveals "necess[ity]" and "incur[sion]" to be of a kind in Insurance Law § 5102 et seq. (see § 5102 [a] [1] [providing coverage for "(a)ll necessary expenses incurred for . . . services"]), which is important because we explicitly stated in Chubb that billing for unnecessary proceduresi.e., overbillingwas subject to preclusion, not the no-coverage exception (see e.g. Chubb, 90 NY2d at 199 ["We *565 would not, for example, extend this exceptional exemption to excuse Chubb's untimely defense in relation to treatment being deemed excessive by the insurer. That would not ordinarily implicate a coverage matter and, therefore, failure to comply with the Insurance Law time restriction might properly preclude the insurer from a belated rejection of the billing claim on that basis" (emphasis added)]).
More fundamentally, determining whether a specific defense is precluded under Presbyterian or available under Chubb entails a judgment: Is the defense more like a "normal" exception from coverage (e.g., a policy exclusion), or a lack of coverage in the first instance (i.e., a defense "implicat[ing] a coverage matter")? In our view, a defense that the billed-for services were never rendered is more akin to the former. In this case, there was an actual accident and actual injuries. As the Appellate Division put it, "coverage legitimately came into existence" (42 AD3d at 285), thus removing this fact pattern from the realm of cases where preclusion would "create coverage where it never existed" (Matter of Worcester Ins. Co. v Bettenhauser, 95 NY2d 185, 188 [2000]).
While preclusion requires Travelers to pay a no-fault claim it might not have been obligated to honor if timely disclaimed, the same can be said of any policy defense subject to preclusion. Moreover, although there may be some merit to Travelers' protest that a 30-day (plus potential tolling) window is generally too short a time frame in which to detect billing fraud, any change is up to the Legislature.[2] As we observed in Presbyterian and repeated in Hospital for Joint Diseases:
"No-fault reform was enacted to provide prompt uncontested, first-party insurance benefits. That is part of the price paid to eliminate common-law contested lawsuits. . . . The tradeoff of the no-fault reform still allows carriers to contest ill-founded, illegitimate *566 and fraudulent claims, but within a strict, short-leashed contestable period and process designed to avoid prejudice and red-tape dilatory practices" (Presbyterian, 90 NY2d at 285 [citation omitted]; see also Hospital for Joint Diseases, 9 NY3d at 320, quoting Presbyterian, 90 NY2d at 285).
Finally, Travelers and amici curiae argue that, unless we adopt the approach they advocate, insurers in the future will be forced to blanket insureds and their assignees with demands for additional verification in order to combat fraud. A flurry of verification requests, however, is unlikely to burden the no-fault system more than the uncertainty and delay apt to result from judicial expansion of the no-coverage exception. And in this case, of course, Travelers discovered potential billing fraud well within the 30-day time period. Rather than acting on Fair Price's claims in a timely fashion, however, Travelers waited for almost two full years.
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
SMITH, J. (dissenting).
Travelers asserts, with support in the record, that it is being asked to pay for medical supplies that were never delivered to the patient it insured. I would hold that, if indeed the basis for Fair Price's claims is nonexistent, those claims are outside the coverage of the policy, and Travelers' defense is therefore not barred by its failure to meet the deadlines imposed by Department of Insurance regulations.
While the general rule is, as the majority says, that defenses not asserted under the time schedule in the regulations are barred (Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274 [1997]), we made an exception in Central Gen. Hosp. v Chubb Group of Ins. Cos. (90 NY2d 195, 198 [1997]), decided the same day as Presbyterian, for defenses based on "a strict lack of coverage ground." In distinguishing between "lack of coverage" and other defenses, we followed a precedent in the liability insurance area, Zappone v Home Ins. Co. (55 NY2d 131 [1982]).
The rule of Central Gen. Hosp. and Zappone is difficult to apply. Despite our use of the word "strict" in Central Gen. Hosp., there is no theoretically perfect way to distinguish lack of coverage defenses from others. It can plausibly be said that any claim not payable under the terms of the policy is a claim the policy *567 does not cover (see Zappone, 55 NY2d at 140-143 [Gabrielli, J., dissenting]). In Zappone, we said that to preclude a defense based on lack of coverage "would be to impose liability upon the carrier for which no premium had ever been received" (55 NY2d at 135-136), but every loss for which a carrier did not agree in its policy to pay is one for which it never received a premium. Nevertheless, it is clear under Presbyterian that insurers must pay most such claims if they do not assert their defenses in a timely way.
The Zappone/Central Gen. Hosp. rule is best understood as requiring different treatment for defenses of such fundamental importance that, unlike most defenses, they should not be subject to waiver by insurance company inaction. These defenses are treated as "lack of coverage" defenses. The defense we upheld in Zappone was that the liability sued on was "incurred neither by the person insured nor in the vehicle insured" (id. at 135). The defense in Central Gen. Hosp. was that the injuries for which the insured was treated did not arise out of an automobile accident. That no medical supplies were provided to the insured is an equally fundamental objection to a claim, and should be treated as a defense based on lack of coverage. That is consistent with the plain meaning of the words "lack of coverage." Neither the insurance policy at issue here nor any other covers wholly fabricated claims.
If indeed Travelers' insured never received the supplies for which Travelers was billed, to uphold these claims would be to countenance a particularly gross form of fraud. I acknowledge that, under Presbyterian, some "illegitimate and fraudulent claims" must be paid if a defense to them is not asserted promptly (90 NY2d at 285); no doubt padded medical bills, overpriced merchandise and other relatively petty abuses will sometimes slip through. But I agree with Justice Golia, dissenting from the Appellate Term's ruling in the present case, that the line should be drawn at what he called "pure fraud" or "classic fraud" (Fair Price Med. Supply Corp. v Travelers Indem. Co., 9 Misc 3d 76, 81 [App Term, 2d & 11th Jud Dists 2005, Golia, J., dissenting]). An attempt to distinguish this kind of fraud from the lesser kinds would not succeed perfectly, and would no doubt be the cause of some delay and administrative inconvenience, but I think it would be worth the cost.
The impact of fraud on this State's no-fault system is notorious, as the Appellate Term majority and the Appellate Division acknowledged, even while rejecting Travelers' defense. The Appellate *568 Term referred to "the steep increase in fraudulent no-fault benefits claims arising . . . from provider claims where the services or supplies were . . . never rendered" (9 Misc 3d at 78); the Appellate Division said that "the fraud and abuse that plagues the no-fault insurance system is a serious problem with widespread consequences" (42 AD3d 277, 285-286 [2d Dept 2007]). Today's decision, I believe, unjustifiably hinders insurers' efforts to keep that problem within bounds.
Order affirmed, etc.
NOTES
[1] Travelers alleges that on November 2, 2001 it denied Fair Price's claim dated September 18, 2001, which covered the medical supplies supposedly furnished to Nivelo in May 2001. The only denial-of-claim form in the record, however, is dated August 15, 2003 and pertains to the medical supplies prescribed for and allegedly provided Nivelo in both May and June 2001.
[2] For his part, the Superintendent appears to be well aware of the interplay of no-fault deadlines and fraud. A few years ago he reduced the regulatory time frames for automobile accident victims or their assignees to claim and prove entitlement to no-fault benefitsa measure applauded by insurersin part because

"the most common example of . . . fraud . . . consisted of exploiting the time lag between the alleged loss and the deadline for submitting proof of the loss, coupled with the reality that insurers are given only 30 days to review and investigate claims before paying them without risk of penalties for denying or delaying a claim" (Medical Socy., 100 NY2d at 861).