OPINION OF THE COURT
Fred J. Hirsh, J.
Defendant moves for summary judgment dismissing this action to obtain payment of first-party no-fault benefits.
Background
Garden State Anesthesia Associates, PA (GSAA) provided anesthesia services to Angela Gowan-Walker on March 8, 2011, March 29, 2011, April 12, 2011 and June 7, 2011. GSAA took an assignment of benefits from Gowan-Walker and submitted its claims for payment to defendant Progressive Casualty Insurance Company. Progressive acknowledged receipt of the claims for services provided as follows: (1) March 8, 2011 on April 27, 2011; (2) March 29, 2011 on May 9, 2011; (3) April 12, 2011 on May 23, 2011; and (4) June 7, 2011 on July 5, 2011. Progressive has not paid or denied any of these claims.
By letter dated May 4, 2011, Progressive advised GSAA its claim for services provided on March 8, 2011 was being delayed pending Gowan-Walker appearing for an examination under oath (EUO).
Even though Gowan-Walker appeared for an examination under oath on May 27, 2011, Progressive issued a follow-up letter to GSAA dated June 6, 2011 advising GSAA its claim for services provided on March 8, 2011 was being delayed pending Gowan-Walker appearing for an examination under oath.
Progressive sent a letter dated June 17, 2011 to GSAA advising GSAA processing of its claim for medical services provided on March 8, 2011 was being delayed pending receipt of medical records from Garden State Pain Management, Dr. David Brizer, Dr. Rajan Gulati, Dr. Moinhuddin Ahmed, Dr. Jennifer Heinze, Dr. Ralph Bowman, and Dr. Minesh Patel; the complete workers’ compensation file from the workers’ compensation carrier who had paid workers’ compensation benefits to Gowan-Walker in connection with a February 14, 2009 accident; the complete workers’ compensation file from the workers’ compensation carrier who had paid Gowan-Walker with workers’ compensation benefits for a March 22, 2006 accident; the complete injury and treatment records for an April 28, 2011 loss with GEICO; and *998 the complete no-fault file from GEICO relating to the April 28, 2011 loss.
Progressive sent a follow-up notice to GSAA dated July 20, 2011 advising GSAA review of its claim for services provided on March 8, 2011 was still being delayed because the information and documentation referenced above had not yet been received.
Progressive sent letters identical to the June 17, 2011 and July 20, 2011 letters to GSAA regarding the claims submitted for services on March 29, 2011, April 12, 2011 and June 7, 2011. The letters relating to the March 29, 2011 and April 12, 2011 claims are dated June 17, 2011 and July 20, 2011. The letters relating to the June 7, 2011 claim are dated July 14, 2011 and August 17, 2011.[1]
The papers do not reflect what information Progressive was able to obtain from the aforementioned medical providers and/or when the medical providers furnished Progressive with the requested information or documentation.
On June 23, 2011, Progressive sent a letter to Gowan-Walker’s attorney copied to Gowan-Walker advising them processing of her no-fault claim was being delayed pending receipt of the records from the abovementioned medical providers and the workers’ compensation files relating to Gowan-Walker’s March 22, 2006 and February 14, 2009 incidents and receipt of the no-fault file relating to Gowan-Walker’s April 28, 2011 motor vehicle incident. This letter also requested Gowan-Walker sign authorizations authorizing Progressive to obtain the files relating to the workers’ compensation matters and April 28, 2011 motor vehicle accident.
By letters dated September 14, 2011, October 20, 2011, December 2, 2011 and January 18, 2012 addressed to GowanWalker’s attorney and copied to Gowan-Walker, both were advised Progressive’s processing of Gowan-Walker’s no-fault claim was being delayed because Progressive had not yet received the workers’ compensation files relating to Gowan-Walker’s March 22, 2006 and February 14, 2009 incidents, the no-fault file relating to Gowan-Walker’s April 28, 2011 motor vehicle accident, and an authorization signed by Gowan-Walker authorizing release of those records.
*999 None of the aforementioned letters sent by Progressive to Gowan-Walker or her attorney were copied to GSAA.
Progressive has never requested any verification or information directly from GSAA regarding its claims.
Discussion
An insurer must pay or deny a no-fault claim within 30 days of receipt unless its time to pay the claim is tolled or extended. (11 NYCRR 65-3.8 [a], [c].)
An insurer has 15 business days from receipt of a claim to request verification. (11 NYCRR 65-3.5 [b].) If an insurer does not receive the requested verification within 30 days of the original request, the insurer must, within 10 calendar days, issue a follow-up verification request to the party from whom verification is requested. (11 NYCRR 65-3.6 [b].)
An insurer does not have to pay or deny a claim until it receives all timely requested verification. (St. Barnabas Hosp. v American Tr. Ins. Co., 57 AD3d 517 [2d Dept 2008]; New York & Presbyt. Hosp. v Allstate Ins. Co., 31 AD3d 512 [2d Dept 2006].)
Where the verification requested is an examination under oath, the verification is deemed to have been received on the day the EUO was conducted. (11 NYCRR 65-3.8 [a].)
The EUO of Gowan-Walker was conducted on May 27, 2011. Therefore, Progressive had 30 days from that date to pay or deny GSAA’s claims unless its time to pay or deny the claims was otherwise tolled or extended.
Actions brought before an insurer has received all timely requested verification are premature and are subject to dismissal. (St. Vincent Med. Care, P.C. v Country Wide Ins. Co., 80 AD3d 599 [2d Dept 2011]; All Boro Psychological Servs., P.0C. v Allstate Ins. Co., 38 Misc 3d 134[A], 2013 NY Slip Op 50069[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2013].)
Issuance of a delay letter that does not request verification does not toll the statutory time in which a claim must be paid or denied. (Parsons Med. Supply, Inc. v Progressive Northeastern Ins. Co., 36 Misc 3d 148[A], 2012 NY Slip Op 51649[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2012]; Points of Health Acupuncture, P.C. v Lancer Ins. Co., 28 Misc 3d 133[A], 2010 NY Slip Op 51338[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2010].)
The purpose of verification is to permit the carrier to obtain and review all information relevant and appropriate to a claim *1000 submitted by the provider so the carrier can determine if the claim should be paid or denied in whole or in part. (See Fair Price Med. Supply Corp. v Travelers Indem. Co., 10 NY3d 556 [2008]; 11 NYCRR 65-3.5 [b].)
Verification should be requested only when there is a good reason to do so and should be done as expeditiously as possible. (11 NYCRR 65-3.2 [c].)
The term “verification” is not defined by the no-fault regulations. The appellate courts have not provided a workable definition of verification or a clear statement of what information or documentation can be obtained by verification. The no-fault regulations and case law do not clearly establish whether the carrier obtains an extension of time to pay a claim of all no-fault claims when there is any outstanding verification or whether the extension can be obtained if the requested verification is relevant or related to the specific claim.
A reading of the transcript of the EUO indicates much of the information sought relates to treatment provided to GowanWalker by doctors who were treating her for migraines and Multiple Sclerosis. GSAA provided anesthesia for diagnostic and therapeutic nerve blocks and injections.
In order to obtain a toll or extension to pay a no-fault claim because of outstanding verification, the information requested must have some rational or reasonable relationship to the specific provider’s claim. In some cases, the relationship between the requested verification and the claimant’s claim is obvious, e.g. requests for medical records for the treatment in question, letters of medical necessity for the testing or treatment, copies of X ray or MRI films or test results. In other cases, such as this one, the relationship between the requested verification and the claim is not apparent. In such cases, in order to obtain the extension of time to pay or deny the claim the insurer must offer some explanation regarding the nexus or relationship between the requested verification and the claim being reviewed.
An insurer does not obtain an extension of time to pay a no-fault claim when the verification requested and outstanding is not related or relevant to the insurer’s review and evaluation of the specific provider’s claim. Otherwise, an insurer could obtain a toll or extension of time to pay any no-fault claim by requesting verification from all providers or claimants and then not paying or denying the claim until all verification, related or unrelated to the specific claim, had been received. Permitting an *1001 insurer to obtain a toll or extension of time to pay a no-fault claim until it receives verification that is unrelated and irrelevant to the insurer’s evaluation of the specific claim would be contrary to the stated purpose of the no-fault law which is to insure prompt payment of claims for medical treatment provided to motor vehicle accident victims regardless of fault. (LMK Psychological Servs., P.C. v State Farm Mut. Auto. Ins. Co., 12 NY3d 217 [2009]; Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co., 9 NY3d 312 [2007]; 11 NYCRR 65-3.2 [a].)[2]
The lack of merit of Progressive’s position can be gleaned from the affirmation of Progressive’s counsel that states “Defendant’s motion for Summary Judgment should be granted in its entirety as the medical services provided were not medically necessary as well as the assignor never had durable medical equipment delivered” even though medical necessity is not in issue in this action and the action does not involve durable medical supplies.
This court questions how information relating to an April 28, 2011 motor vehicle accident can be relevant to the evaluation of claims submitted for treatment provided on March 8, March 29 and April 12, 2011.
Questions of fact exist as to whether the letters which Progressive relies upon are verification requests or delay letters. The letters advise GSAA that Progressive is seeking information. However, the letters do not request any specific information or documentation from GSAA regarding or relating to its claims. These letters appear to be advising GSAA that payment of its claims will be delayed until the information requested from other medical providers and other insurers, some of which has no apparent relationship to GSAA’s claims, has been received. Nothing in these letters or defendant’s papers indicates how the information requested is related or relevant to Progressive’s evaluation of GSAA’s claims. The court could find these letters are delay letters, not verification requests.
For the foregoing reasons, defendant’s motion for summary judgment is denied.

. All of the letters sent by Progressive to GSAA state the claims are being denied on the grounds the fees are not in accordance with the no-fault fee schedule. However, the letters do not indicate how the fees in question deviate from the permissible fees. Progressive does not assert fee schedule as a basis for granting summary judgment.

. If a person sustains both orthopedic and dental injuries in the same motor vehicle accident, the insurer should not obtain a toll or extension of time to pay the claims of providers who are treating the injured party for the orthopedic injuries while awaiting verification of the claims for dental injuries unless there is a demonstrated relationship between the dental and orthopedic injuries.